## Taussig, *Appellant,* v. Reel *et al.*

### Division Two, June 2, 1896.

1. **Powers:** CONSTRUCTION: LEASE BY LIFE TENANT, VALIDITY OF. Remainder-men executed to the life tenant an instrument empowering the latter to lease the property "for and during such term or terms of years as to her may seem meet and proper and to such persons as she may deem proper, provided that no such term or terms of demise shall exceed the period of fifteen years, and shall contain no clause of renewal," and that "nothing herein contained shall be so construed as to authorize such life tenant to lease, demise, or convey the said premises or any part thereof for a longer period than fifteen years," etc. *Held,* that the power given such life tenant was not exhausted by a lease for fifteen years, and that on the termination of such lease she could execute another not to exceed such period.

2. ———: ———: ———. Such power, however, did not authorize the life tenant to make a lease to begin *in futuro.*

3. ———: ———: ———. Where a life tenant executed, under a power from the remainder-men, a lease which was void because it was to begin in the future, the fact that she was still living when the term began did not render the lease valid as against the remainder-men or their assigns.

4. ———: ———: ———. Nor did the fact that at the time of the making of the second lease the tenant then in possession was holding the residue of an unexpired term and that such unexpired term, together with the time fixed by the new lease, did not exceed fifteen years, operate to render the new lease valid, as a continuation of the existing one.

5. **Equity**: ENFORCEMENT OF POWERS: CONTRACT FOR LEASE. Courts of equity will sometimes enforce the execution of a power, e. g., one to execute a lease, where the lessee is in possession under a contract with the donee of the power for a lease.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Frederick N. Judson* for appellant.

It is submitted that the court below erred in holding that the reversionary lease made by Eugenia Reel, the life tenant, May 21, 1889, to begin on May 21, 1891, was, by virtue of the power of May 21, 1860, binding upon the appellant as assignee of the remainder-men after the death of the life tenant, and that the lease should have been held to have been terminated as to the appellant, upon the death of the life tenant, on each of the following grounds: *First.* Because the power given to the life tenant by the instrument of May 21, 1860, was exhausted by the first exercise thereof, i. e., by the first lease for fifteen years made to F. Aug. Schaeper on May 21, 1860. 4 Greenleaf's Cruise's Dig. *158; Lieber on Hermeneutics [Hammond's Edition], rule 8, p. 120; *Deffendoerfer v. Public Schools*, 120 Mo. 447. *Second.* Even assuming that the power was not exhausted by the first lease for fifteen years, the lease in controversy made May 21, 1889, to begin May 21, 1891, was void as to the remainder-men, after the death of the life tenant, because by its terms it was reversionary, i. e., to begin *in futuro.* 4 Greenleaf, Cruise, Digest, *166; 1 Wood on Landlord and Tenant [2 Ed.], p. 301, sec. 152; 2 Chance on Powers, p. 267, *et seq.* (1267, *et seq.*); 1 Woodfall on Landlord and Tenant [13 Eng., 1 Am. Ed.], *204; Farwell on Powers, p. 485; *Slocomb v. Hawkins*, Yelv. 222; *Shaw v.*

*Summers*, 3 Moore, 196; *Bayons v. Nelson*, T. H. Raymond, 247; *Countess of Sussex v. Wroth*, Cro. Eliz. 5; *Doe d. Copleston v. Hiern*, 5 M. & S. 45; *Pollard v. Greenville*, 2 Ld. Raymond, 792; *Calvert v. Allen*, 1 East (N. S.), 505 (see also 2 East, 376); *Bowes v. Waterworks*, Jacob, 324, and 3 Maddox, 194; *Doe d. Pulteney v. Cavan*, 5 T. R. 567; *Griffin v. Ford*, 1 Bosworth (N. Y.), 124. The rule established by the foregoing cases, that unless the power expressly authorized the donee to make reversionary leases, such leases are void, is inflexible, so that a lease made to commence only a day after its execution, is as void both in law and in equity as one which is to begin one hundred years thereafter. Woodfall on Landlord and Tenant, p. 204; 2 Chance on Powers [Ed. 1841], sec. 2207, p. 279; Farwell on Powers [London Ed. 1894], page 487; 1 Wood on Landlord and Tenant [2 Ed.], 301. A lease *in futuro* is none the less void because made to a tenant then in possession under a previous unexpired term, and the unexpired term of the former lease, together with the latter, did not, in point of time, exceed the limits fixed by the power. Greenleaf's Cruise, *166; Woodfall on Landlord and Tenant, 205, and cases cited; *Calvert v. Allen*, 1 East (N. S.), 505; *Doe d. Pulteney v. Lady Cavan*, 5 T. R. 567; Wood on Landlord and Tenant, 303; *Slocumb v. Hawkins*, Yelv. 222; *Smith v. Day*, 2 M. & W. 674. The power to make reversionary leases, i. e., to begin *in futuro*, must be clearly and expressly given (see authorities, *supra*), and no such power is given by the instrument of May 21, 1860. *Third.* Even if it be conceded that the power authorized both successive and reversionary leases, still the lease in question would fail as against the remainder-men, as the lease contains no reference to the power. It can not be supported on the theory that it must have been made with reference to the power,

since, as Mrs. Reel had an interest in the property as life tenant, the lease was valid against her, and would have been good for its term had she not died before its expiration. The law, therefore, presumes that she intended to act with reference to her own estate, and not with reference to the power. *Pease v. Pilot Knob*, 49 Mo. 124; *Owen v. Switzer*, 51 Mo. 331. *Fourth.* Respondent John H. Reel, having ratified the lease by the acceptance of two quarterly rent installments, with full knowledge of all the facts, respondents Schaeper and Pearce are for the unexpired term of the lease, tenants in common with appellant of Reel's one third interest; and as they have retained possession, and collected all rents, plaintiff is entitled to a decree for an accounting against them for his two thirds of the rents since July 9, 1892, in this proceeding, and to have the amount found due him declared a charge upon their interest, payable out of the proceeds thereof. *Holloway v. Holloway*, 97 Mo. 628. As this right of accounting will include rents collected until the sale, the exact amount to be accounted for can not be determined until the case is ripe for final order of distribution. But whether or not the lease is binding upon Reel, appellant's right to an accounting against respondents Schaeper and Pearce, for the rents collected by them since the death of the life tenant, and to enforce such right, if necessary, by personal judgment against them in this proceeding, is clear. The court in this case has all the powers of a court of chancery, and can enforce any rights which are necessarily adjudicated in the determination of the questions involved in this proceeding. *Holloway v. Holloway*, 97 Mo. 628; Freeman on Co-ten. & Part. [2 Ed.], secs. 425, 521; Story on Eq. Jur., secs. 655, 466; *Obert v. Obert*, 2 Stockton, 98; *Scantlin v. Allison*, 32 Kan. 376; *Leach v. Beattie*, 33 Vt. 195; *Davidson v. Thompson*, 22 N. J. Eq. 83; *Hill*

*v. Fullbrook*, Jac. Ch. 574; *Bowles v. Bowles*, 80 Ky. 529.

*Frank S. Reel* and *Thomas S. Meng* for respondent, J. H. Reel.

(1)  The lease to Mrs. Schaeper was binding upon the remainder-men under the authority of the power. (2)  The power should be liberally construed in favor of the lessees. *First.*  Because it is for the benefit of the estate of the remainder-men. *Taylor v. Horde*, 1 Burr. 60, at pp. 120, 121; *Shannon v. Bradstreet*, 1 Schoales & Lefroy, 52; *Campbell v. Leach*, 2 Amb. *748; *Earl of Darlington v. Pulteney*, Cowper, pp. 266, 267; 2 Sugden on Powers [3 Am. Ed.], *305, *et seq.*; 2 Chance on Powers, 214. *Second.*  The lease having been made in pursuance of authority granted by the remainder-men, and so far as it takes effect out of their interest, they receiving the consideration therefor, the lessees are purchasers for value from the remainder-men. '2 Chance on Powers, 536; 2 Sugden on Powers [3 Am. Ed.], *93; Farwell on Powers, 270; *Campbell v. Leach, supra*, at pp. 746–748; *Shannon v. Bradstreet, supra.* (3) Even if the power be construed to authorize leases in possession only, the lease in controversy is good. *First.*  Because made to the lessee of an unexpired term—the unexpired portion of the term and the new term together not exceeding the limitation in point of time fixed by the power—and amounting practically to a lease *in praesenti* for seven years. *Second.*  Because it took effect in possession during the continuance of the life estate, being thus identical in effect upon the estate of the remainder-men with a lease in possession. 2 Chance on Powers, 529; 1 Sugden on Powers, *498, sec. 47. *Third.*  Because the life tenant could have executed this lease under authority of the power:  By

a surrender of the old term and a new lease for seven years. By a concurrent lease for seven years to take effect from the date of the execution thereof. *Read & Nashes* case, 1 Leonard, 147; *Goodtitle v. Funucan*, 2 Douglas, 565, p. 572; *Doe d. Allen v. Calvert*, 1 East (N. S.), 505; *Edwards v. Sleater*, Hardre's Report, 410; *Berry & Riches* case, cited in argument in *Edwards v. Sleater*, supra, p. 412; 4 Greenleaf's Cruise, Dig., 169. A contract by the life tenant in 1889 to make this lease in 1891, could have been enforced against the remainder-men. *Shannon v. Bradstreet, supra; Campbell v. Leach, supra,* p. 749; 2 Sugden on Powers, *118; 2 Chance on Powers, 525, *et seq.* And equity will aid the defective execution of a power in favor of purchasers for value. (4) It is not necessary that reference be made to the power. If the estate will not have effectual continuance in point of time out of the life estate, it shall take effect under the power. *Campbell v. Johnson,* 65 Mo. 439, overruling *Owen v. Switzer,* cited by appellant; 2 Sugden on Powers, *418, 419. (5) If the lease to Mrs. Schaeper is held void, the payment of two installments of rent to this respondent was made and received under a mutual mistake of fact, and the tenants are entitled to be repaid those amounts, but the transactions do not have the effect of charging this respondent's undivided interest in any other way. 2 Sugden on Powers, *308, and cases cited; 2 Chance on Powers, 350; Pollock on Contracts [Am. Ed. 1888], *402.

*Mills & Flitcraft* for respondents, Schaeper, Pearce et al.

(1) The power was not exhausted by the first leases. It was in force, to be exercised at the time of executing the last lease. Boon on Real Property, sec. 43; *Jackson v. Van Hosen,* 4 Cowen, 325; *Ames v. Hol-*

*derbaum*, 44 Fed. Rep. 228.    (2)    A lease may properly be made under such a power to begin *in futuro*. *Atkyns v. Horde*, 1 Burr. 120; *Shannon v. Bradstreet*, 1 Sch. & Lefr. 52; 2 Sugden on Powers [3 Am. Ed.], *124; *Dowell v. Dew*, 1 Y. & C. Ch. 345, on appeal, in 7 Jur. 117, part 1; *Gas Co. v. Towse*, L. R. 35 Ch. D. 533; *Affleck v. Affleck*, 26 L. J. Ch. (N. S.) 358; *Johnson v. Touchet*, 37 L. J. Ch. Div. 25; 2 Sugden on Powers [3 Am. Ed.], *363, par. 44; *364, par. 47; *Doe d. Phillip v. Benjamin*, 1 Perry & Davison, 440; *Coventry v. Coventry*, 2 P. Wms. 222; *Alford v. Alford*, 2 P. Wms. 231.    (3)    It was not necessary that the instrument should refer to the power. *Kinney v. Mathews*, 69 Mo. 520; *Owen v. Switser*, 64 Mo. 77; *Campbell v. Johnson*, 65 Mo. 439; *Boyer v. Allen*, 76 Mo. 498; *Scheidt v. Crecelius*, 94 Mo. 322; *Drumheller v. Haff*, 23 Mo. App. 161.    (4)    The lessee has the right to remain by reason of the ratification of the lease by one of the remainder-men. *Badger v. Holmes*, 6 Gray, 118; *Brown v. Wellington*, 106 Mass. 319; *McGarrell v. Murphy*, 1 Hilt. 132; *Mumford v. Brown*, 1 Wend. 52; *McKay v. Mumford*, 10 Wend. 351; *King v. Phillips*, 1 Lansing, 421; *Thurston v. Minke*, 32 Md. 575; *Woodworth v. Campbell*, 5 Paige, Ch. 518.

BURGESS, J.—This is an action for partition of property on the southeast corner of Franklin avenue and Eighth street in the city of St. Louis, fronting one hundred and twenty-seven feet and six inches on Franklin avenue by a depth of fifty-nine feet and six inches on Eighth street, of which plaintiff and John H. Reel, one of the defendants, are tenants in common.

The facts as stated by counsel for plaintiff are substantially as follows:

The premises in question, with other property, belonging to John W. Reel, deceased, were partitioned

in 1842 and assigned to Eugenia Reel, his widow, for life, remainder to her children, John H. Reel, Harriet Reel, and Mary S. Reel. Harriet subsequently married Thomas L. Snead, and Mary S. married one Adolph Paul. Mr. and Mrs. Paul died leaving an only son, Adolph L. Paul. By deed dated March 13, 1890, Adolph L. Paul conveyed his one third interest to Charles S. Taussig, and by deed dated July 14, 1892, Mr. Taussig also acquired, through *mesne* assignment, the one third interest of Mrs. and Mr. Snead, making him at the time of the institution of this suit, the owner of an undivided two third's interest, John H. Reel retaining his undivided one third interest in the fee of the property in question. The property is not susceptible of division in kind.

The defendants, except Reel, claim under a certain lease made by the deceased tenant for life, of the premises in question, and the single question in controversy is whether this lease was terminated, as plaintiff contends, by the death of the life tenant, or whether such lease survived the life tenant by virtue of a certain power executed by the remainder-men in the lifetime of the life tenant, and prior to the making of said lease. The single question then, presented in this court, involves the construction of this power.

On May 21, 1860, the three children of Mrs. Reel, who then held their original interests, each one third in remainder, Mrs. Reel, the life tenant, being then fifty years of age, executed an instrument in which it is recited that their father died seized of a number of parcels of land in which Eugenia Reel is in possession as doweress entitled to life estate, "and is now as doweress as aforesaid, in possession of sundry lots, pieces, or parcels of land, and of sundry parcels of land lying in the county of St. Louis, and several other counties in the state of Missouri, and holding and possessing the

same for the term of her natural life, and is desirous of leasing said parcels, pieces, or tracts of land," and, therefore, in consideration of the premises, and of $1, and of love and affection, they do "by these presents, empower and authorize said party of the second part, to lease, demise and farm let all and singular such portions of the real estate of which said John Reel died seized and of which she, the said party of the second part, is in possession as doweress as aforesaid, and situated in the city of St. Louis, state of Missouri, for and during such term or terms of years as to her may seem meet and proper, and to such persons as she may deem proper; provided, that no such term or terms of demise shall ever exceed the period of fifteen years, and shall contain no clause of renewal. Said lease or leases to contain the usual covenants for the quiet and peaceable enjoyment of the premises aforesaid, provided nothing herein contained shall be so construed as to authorize the said party of the second part to lease, demise, or convey the said premises, or any part thereof, for a longer period than fifteen years, or to authorize the heirs, executors, administrators or assigns of said Eugenia Reel to collect any rents, issues, or profits that may accrue, due out of or on account of any such lease or leases after the termination of the life estate of said Eugenia Reel, in the property so leased or demised."

On the date of the execution of the foregoing instrument, May 21, 1860, Mrs. Reel, the life tenant, made a lease for fifteen years from its date to F. August Schaeper, husband of defendant, Margaret Schaeper. That lease was never recorded. The annual rental was $1,000 for the first five years, and a revision on a six per cent basis for each five years thereafter, lessee to pay all taxes. No right was reserved by lessee to remove any impovements.

It appears from the testimony of Mrs. Schaeper

that shortly after the execution of this lease, her husband erected the improvements now on the premises which consist of old one story brick buildings, containing some seven stores and now of little value.

After the expiration of this lease, on May 21, 1876, Eugenia Reel, the life tenant, executed to F. August Schaeper, a second lease for fifteen years, expiring May 21, 1891, at an annual rental of $1,500 and taxes. This lease contains no right on the part of the lessee to remove any part of the improvements, but provides as follows: "The said tenement and premises are to be surrendered to said lessor or assigns or successors in the same condition they are in now, only excepting natural wear, or the effects of accidental fire. All the repairs deemed necessary for the lessee are to be made at the expense of the lessee."

Two years before the expiration of this lease, Mrs. Schaeper, her husband having died in 1885, obtained from Mrs. Eugenia Reel, the life tenant, the lease now in controversy, which was executed on May 21, 1889, to begin *in futuro*, to wit, on May 21, 1891, for a period of five years, from the last named date, at an annual rental of $1,500 and taxes, and containing the following clause in regard to improvements: "It is further agreed that in case of the punctual payment of the rent and taxes, as herein provided, the said party of the second part is hereby authorized to remove all such improvements at the 'termination of this lease, that she or F. August Schaeper or Henry Sternberger, or those claiming under them, may or will have erected on said premises."

Margaret Schaeper assigned her interest in the east sixteen and one half feet of this lease to Charles E. Pearce, one of the defendants. The other defendants other than John H. Reel, were tenants holding under them respectively.

Eugenia Reel, life tenant, died July 9, 1892. Thereupon plaintiff demanded possession of the premises. At this time, it appears that none of the parties except John H. Reel were aware of the existence of the instrument of May 21, 1860, although it had been recorded at the time of its execution. But Mrs. Schaeper and Pearce subsequently learned of this power and declined to surrender the premises, although plaintiff insisted that, notwithstanding said power, the lease was terminated by the death of the life tenant, and he declined to accept the rents reserved in the lease of 1889 from the lessee, Mrs. Schaeper. Defendants Schaeper and Pearce had therefore continued to collect the rents from their respective subtenants, those collected by Mrs. Schaeper amounting to nearly $5,000 per annum, and those of Mr. Pearce to some $600 per annum.

Defendant John H. Reel, on the contrary, accepted the one third of the rent received in the lease from Mrs. Schaeper, the lessee, after the death of his mother, and in certain letters written their counsel he admitted the validity of the lease as to him, and this position was reaffirmed in his answer to plaintiff's original petition. Subsequently, however, on the day of the trial, he filed amended answer, both to the petition and to the cross petition of Margaret Schaeper, and in the latter claimed that the rental had been received by him under a mistake of fact, to wit, his belief that the lease was binding on him, when in fact, it was not binding on him, and that the power to lease had been exhausted by the life tenant prior to the making of the last lease in question.

The amended petition of plaintiff sets out the facts as above detailed, alleges that the institution of the possessory actions for possession would entail the necessity for a multiplicity of suits against a large

number of subtenants, many of whom he avers are insolvent and could not respond to judgment for two thirds of the amount of profits and rents to plaintiff, and that in any event himself and defendants Schaeper and Pearce, as lessees under defendant Reel, could not agree to the renting of the premises, or the collection of the rents. The petition proceeds upon the theory that the one third interest of Reel is subject to the unexpired term of the lease by reason of his ratification of the lease by the acceptance of rent, and therefore defendants Schaeper and Pearce are, for the unexpired term of the lease, tenants in common with plaintiff of the one third interest. The petition prays that they be required to account to plaintiff for two thirds of the rents received by them since July 9, 1892, the date of the death of the life tenant, and that the same be paid to plaintiff from the proceeds of their interest in the property and for further relief.

The answer of Pearce and Mrs. Schaeper, and their subtenants sets up the power before set forth; alleges that the lease was thereby rendered valid for its full term; that defendant Reel had accepted rent; and prayed that, in the event that partition was decreed, the full terms of their leases be set apart to them, and that their possession be undisturbed until the sale.

The circuit court held that, under the "power" executed in 1860, the life tenant was impliedly authorized, not only to make successive leases for periods of fifteen years and under, but to make leases beginning *in futuro*, that is, reversionary leases, subject only to the limitation that the unexpired part of the old lease and the new reversionary lease together should not exceed fifteen years. It was held, therefore, that the lease executed in 1889 to begin in 1891, for five years thereafter, was binding on the remainder-men, but also held that the clause therein giving the right to remove

improvements was void, as the improvements were on and had become a part of the land before that lease was made. Interlocutory decree for partition and sale was entered accordingly.

Plaintiff's motion for new trial was overruled, appeal to this court was duly perfected by him from so much of the decree as held the lease binding upon him, but no appeal was made by any of the defendants.

1.  It is insisted by plaintiff that the power given to Mrs. Reel, the life tenant, by the instrument of writing of date May 21, 1860, was exhausted by the first exercise thereof; that is, by the first lease for fifteen years made to F. August Schaeper made May 21, 1860, and which expired May 21, 1875.  Upon the other hand, it is contended that as Mrs. Reel was the owner of the property during her life, she needed no power from the remainder-men to execute a lease during that time, and such power was only needed to project a lease beyond her life.  The question then is what was the intention of the parties to be gathered from the four corners of the instrument and surrounding circumstances at the time of its execution, and not from some particular word, phrase, or sentence.

It is axiomatic that powers are to be construed according to the intention of the parties creating them. Mrs. Reel having only a life estate in the property could not lease it for a term of years to any advantage to either herself or the remainder-men because of the uncertain tenure of such a lease, and to enable her to make a more beneficial lease, and to lease it for a term or terms of years the remainder-men executed to her the instrument of writing, dated May 21, 1860.  They could have had no other purpose in so doing, for aside from the power thus conferred by the instrument she possessed the right to lease the property for any period during her lifetime.

This position finds support in the fact that the contract for the lease to F. August Schaeper had already been entered into by Mrs. Reel and Schaeper at the time of the execution of the power by the remainder-men, and depended for its consummation upon the execution of such power. This seems evident from the facts and circumstances in evidence, none of which are more potent than the fact that the power by the remainder-men and the lease to Schaeper were both executed on the same day.

It seems manifest from the power, that the life tenant was authorized thereby to lease the property for any term of years, not exceeding fifteen, and to execute a new lease at the expiration of the term of any lease, but at no time could she lease for a longer time than fifteen years. This we think she had the power to do, as often as she felt so inclined, upon such terms as to her might seem meet and proper. The fact that the power provides that any lease executed by Mrs. Reel, "shall contain no clause of renewal," does not militate against what has been said, as that restriction was evidently to the end that the rent might be readjusted, and that provision might be made for other and additional improvements of the property if desired, at the expiration of each lease, as its rental value might increase and improvements become necessary in order to make it more desirable, rent more readily and at a better price.

And we think it makes no difference, so far as the question now under consideration is concerned, whether the instrument granting the power be strictly construed against the tenant for life, or whether it should be liberally construed in favor of the lessees, as in any event the power to lease, from time to time at the expiration of each lease so long as the life tenant lived,

is clearly conferred by the instrument of writing of date May 21, 1860.

2.   A more difficult question is as to the power of the life tenant to lease the property *in futuro*.

It is argued by plaintiff that the lease in controversy made May 21, 1889, to begin May 21, 1891, was void as to the remainder-men, after the death of Mrs. Reel the life tenant, because by its terms it was reversionary, that is, to begin *in futuro*.

That the owner in fee may make such a contract seems clear, and the life tenant might have done so in this case, had the power to do so been conferred upon her by the remainder-men, by the instrument of May 21, 1860, from which alone she derived power to lease the premises longer than during her life; but no such power is given her by that instrument.

If she had the power to lease the property *in futuro* in this instance, she could have leased it for all time to come in the same way, by entering into leases to run for fifteen years from a fixed date, and a new lease to run for the same length of time, to take effect at the expiration of the next preceding lease, and so on without end, which would be in effect creating a perpetuity; something that is not favored by the law, and in the absence of power to do so, clearly shown to have been conferred by the remainder-men, will not be upheld.

At the time of making the lease in question the term of the tenant then in possession had not expired, nor was the possession surrendered, and as against the remainder-men the lease was void.

In 4 Greenleaf's Cruise's Digest, side pages 165 and 166, it is said:  "Where a power is given indefinitely to make leases, without mentioning the time when they are to commence, it shall be taken strictly against the donee of the power, and consequently be construed so as only to authorize leases in possession,

and not leases in reversion.  *  *  *  A power to make leases generally, does not authorize the donee to make a lease to commence after the determination of a lease in being; for it has been observed that such a lease is reversionary in the strictest sense.''

And in *Slocomb v. Hawkins*, Yelv. 222, it is said that (under a general power to lease for twenty-one years) "she could not make a lease to commence at a day to come, but the lease ought to be in possession and not in interest to commence *in futuro*, nor in reversion after another estate ended; but the law will adjudge on the general power to make leases, without saying more, that they ought to be leases in possession; for if she might by such power make lease upon lease, she might by making infinite leases detain them in remainder from the possession forever; which is contrary to the intent of the parties, and contrary to reason."

And so in *Shaw v. Summers*, 3 Moore, 198: "A general power to lease for a certain number of years without saying either in possession or reversion, only authorizes a lease in possession and not *in futuro*. Such a power receives the same construction as a power to make leases in possession. What is expressed in the one is understood in the other." See, also, 1 Wood on Landlord and Tenant [2 Ed.], p. 301, sec. 152; 1 Woodfall's Landlord and Tenant, 204, 301; *Doe dem. Copleston v. Hiern*, 5 Maul & S. 41; *Bowes v. East London Waterworks*, 3 Madd. 194; *Doe dem. Pulteney v. Cavan*, 5 T. R. *567; *Griffen v. Ford*, 1 Bosworth (N. Y.), 124.

In Farwell on Powers, 487, it is said: "In such a case a lease *in futuro* is void, and if it be made to commence only a day after the date of the deed creating it, it is as fatal a variance from the power as if made

Vol. 134 mo—35

to take effect at the expiration of one hundred years thereafter."

But it is said that when Mrs. Schaeper accepted the new lease, that was in legal contemplation the surrender of the then unexpired lease under which she was holding the property.

This position, however, is untenable, because by the express provisions of the last lease, the time under it was not to begin until the expiration of the former lease.

The rule which prohibits reversionary leases has been to some extent modified in England by statute but it has not been in this state.

The lease being void because of the want of power in Mrs. Reel to make the same, the fact that she was still living when the term began did not validate it as against the remainder-men, or the plaintiff who acquired by purchase the interest of two of them in the property.

Thus in *Doe dem. Allan v. Calvert*, 2 East, 376, the lease was dated March 29, 1798, to begin April 15, 1798; the life tenant died May 27, 1800, or two years after the term began, but in ejectment by the remainder-men, the lease was held void.

In *Bowes v. East London Waterworks, supra*, the lease was dated December 20, 1786, to begin December 25, 1786, and in *Griffen v. Ford*, 1 Bosworth (N. Y.), 124, trustees with power executed a lease December 24, 1849, to begin May 1, 1850, and in both cases the leases were declared void as against the remainder-men.

In *Doe v. Oxenham* (reported in note to *Doe v. Hiern*, 5 M. & S. 45), A, under a power, leased to B for ninety-nine years, to commence from the death of C. C died in the lifetime of A (the lessor) who, therefore, survived the time when the reversionary lease was to go into effect, but the court held that this

made no difference, the lease being void as beginning *in futuro*.

Nor does the fact that at the time of the execution of the lease the tenant then in possession of the premises was holding under an unexpired term, and that the unexpired time of the lease under which the tenant was then holding together with the time fixed by the new lease, do not in point of time exceed fifteen years, the limit fixed by the power, operate to make the latter a continuation of the former lease. Woodfall on Landlord and Tenant, 205; *Doe dem. Allan v. Calvert*, 2 East, 376; *Doe dem. Pulteney v. Cavan*, 5 T. R. 567; 1 Wood on Landlord and Tenant, p. 303, sec. 156; *Slocomb v. Hawkins, supra.*

That a court of equity will enforce the execution of a power under certain conditions is beyond question. For instance, if in this case Mrs. Reel had the power from the remainder-men to make a lease to the property *in futuro*, had contracted to do so, and then refused to execute the lease, or had died before so doing, its execution might have been compelled by a court of equity, in a proceeding against her if living, or if dead against the remainder-men. Especially will this be done where the lessee is in possession under the contract to lease. *Shannon v. Bradstreet*, 1 Sch. & Lef. 52; 2 Sugden on Powers [3 Am. Ed.], *124; *Dowell v. Dew*, 1 Y. & C. Ch. 345; s. c., on appeal, 7 Jur., pt. 1, p. 117; *Gaslight Co. v. Towse*, L. R. 35 Ch. D. 533; *Affleck v. Affleck*, 26 L. J. Ch. (N. S.) 358; *Johnson v. Touchet*, 37 L. J. Ch. 25; *Coventry v. Coventry*, 2 P. Wms. 222.

But the question here is not one where the power was imperfectly executed, or not executed at all, but is as to whether or not any such power existed. The lease by Mrs. Reel was perfect in its execution, but she being without authority from the remainder-men to

State ex rel. v. Murphy.

make it, it is void as to them. When she executed the lease she did all that she could do; she had completed the contract in so far as it was in her power to do so, and could do nothing more. It was good as against her during her life, but uneffectual as to the remainder-men.

It follows that plaintiff is entitled to recover two thirds of the rents of the premises from the time of Mrs. Reel's death, to wit, July 9, 1892. We, therefore, reverse the judgment of the court below in so far as appealed from only, and remand the cause, that an account of the rents may be taken, and the rights of the parties may be equitably adjusted. GANTT, P. J., and SHERWOOD, J., concur.