## HUDSON v. HILDT.

No. 4571. Opinion Filed September 21, 1915.

(151 Pac. 1063.)

1. **INDIANS—Lease of Restricted Allotment—Validity.** Where a lease by a Creek citizen of his restricted allotment is made for agricultural purposes, and before it expires another lease for agricultural purposes is made to the same lessee for a period of five years, to commence in the future, the last lease not being approved by the Secretary of the Interior, **held,** the last lease is void.

2. **SAME.** A valid lease for agricultural purposes of a restricted Creek allotment may be made during the existence of a prior, valid lease, provided it is made for a fair rental, near the termination of the existing lease, and that it does not extend the term more than five years from the date of the last lease.

(Syllabus by Devereux. C.)

*Error from District Court, Wagoner County;*
*R. P. de Graffenreid, Judge.*

Action by J. E. Hildt against A. Sidney Hudson. Judgment for plaintiff, and defendant brings error. Affirmed.

This was an action for ejectment and for damages for the detention of the land, and the facts are: The land in question was the allotment of one Yargee, a duly enrolled Creek Indian. On October 8, 1909, an order was made by the Secretary of the Interior removing the restrictions on the alienation of this land, which order was to become effective simultaneously with the execution of a deed therefor by the allottee to the purchaser. On the 9th day of May, 1910, Yargee and her husband, in compliance with the order, and under the direction and supervision of the Union Indian Agency at Muskogee, exe-

cuted a deed for this land to Hildt, the plaintiff below. On November 7, 1908, Yargee executed to the defendant below, the plaintiff in error in this court, a lease of this land for agricultural purposes, for a term of one year, ending January 1, 1910, which lease contained no stipulation or agreement for a renewal or continuance thereof. This lease was duly recorded, and Hudson went into possession under it. On October 29, 1909, before the expiration of the lease, and while Hudson was in the possession of the land thereunder, Yargee executed to him another agricultural lease on this land for five years from January 1, 1910, which lease, therefore, expired January 1, 1915, or more than five years from its date. This lease was registered on November 1, 1909, and after the expiration of his lease for one year on January 1, 1910, Hudson continued in possession thereunder. The Secretary of the Interior did not approve the last lease for five years.

The trial court held the lease for five years void, and directed it to be canceled, gave judgment in favor of the plaintiff, Hildt, for possession, and for the sum of $140 rents, and for costs. The defendant below brings the case to this court by petition in error and case-made.

*J. C. Pinson, Jess W. Watts, Alvin F. Mooney,* and *Edward M. Gallagher,* for plaintiff in error.

*Sharp & Cunningham* and *James M. Gresham,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). The question presented by this appeal is whether a lessee in possession of a restricted Creek allotment under a valid agricultural lease for one year can take another agricultural lease for five years, to begin in the future, before the term conveyed by the first lease has

expired, and this depends upon the construction of the acts of Congress in regard to the leasing of restricted lands. The first act on this subject is that of June 28, 1898 (30 Stat. p. 507, c. 517), which provides:

"No allottee shall lease his allotment, or any portion thereof, for a longer period than five years, and then without the privilege of renewal."

The next act is that of June 30, 1902 (32 Stat. p. 504, sec. 17, c. 1323), which provides:

"Creek citizens may rent their allotments, for strictly non-mineral purposes, for a term not to exceed one year for grazing purposes only and for a period not to exceed five years for agricultural purposes, but without any stipulation or obligation to renew the same. Such leases for a period longer than one year for grazing purposes and for a period longer than five years for agricultural purposes, and leases for mineral purposes may also be made with the approval of the Secretary of the Interior, and not otherwise. Any agreement or lease of any kind or character violative of this paragraph shall be absolutely void and not susceptible of ratification in any marner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

And the last act is that of May 27, 1908 (35 Stat. p. 312, c. 199; Fed. St. Ann. Supp. 1909, p. 233), which provides:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas or other mining purposes. leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be

made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise: And provided further, that the jurisdiction of the probate courts of the State of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors as used. in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years."

This question has never been directly decided by this court. The first case on this question is *Whitham v. Lehmer*, 22 Okla. 627, 98 Pac. 351. The decision in that case is that the validity of a lease for a term of five years for agricultural purposes made by a Creek Indian is not affected by one or more void leases made by such allottee, either before or after the date of the valid lease. In that case it is said:

"The act in question, in our judgment, by providing that an allottee may make a lease of his land for agricultural purposes, but without any obligation or stipulation for a renewal thereof for a term of not to exceed five years, is intended to make it impossible for an allottee to make a valid lease of his land for a longer period than five years, and to render invalid any such lease for five years carrying with it an obligation  *  *  *  for its renewal, and also in our judgment the spirit and intention of the act goes to the extent of precluding the allottee from leasing his land in any manner, so that on the expiration of five years from any date, after the beginning of the terms of a lease granted, he cannot have it free, clear and unincumbered."

This case clearly holds that, under the statutes above cited, an allottee can make a lease for five years, to begin in the future. How far this holding can be reconciled with the case of *United States v. Noble*, 237 U. S. 74, 35

Sup. Ct. 532, 59 L. Ed. 171, will be considered later in this opinion.

*Williams v. Williams,* 22 Okla. 672, 98 Pac. 909, is also a construction of the act of June 30, 1902 (32 Stat. p. 504, c. 1323), but that case only decides that an allottee who has given a valid lease for five years cannot avoid it by giving an additional lease before the valid one expires. The court says:

"The character of contracts that section 17 of the Creek Supplemental Treaty declares to be void are contracts containing provisions for a longer term than five years, made by any stipulation or obligation attempting to obligate the lessor to renew such contract or extend the same so that ultimately the period which the lessee would be permitted to hold under the lease would exceed the period of five years. To interpret this section to hold that where a citizen has once leased his allotment under this section of the treaty for a period of five years, and subsequently rents the same land to another person for a period of years which, when added to the period of the first contract, would result in a term of greater than five years, renders the first lease void, although the lessee to the first contract was not a party to the second contract, and the second contract was not executed by virtue of any of the terms or agreements of the first contract, but, upon an independent consideration, would certainly lead to great injustice and the giving of opportunity for the perpetration of great fraud. Such would be the necessary interpretation of this section for us to hold in this case that the contract executed by Perryman to Crafton was rendered void by the second contract executed by Perryman to the Muskogee Land Company."

In *Scherer v. Hulquist,* 39 Okla. 434, 130 Pac. 544, it is decided that, under section 14 of the Supplemental Creek Treaty (32 Stat. L. 504), a lease by a Creek Indian during the life of a prior valid lease, but which does not

exceed the term of five years from the date of the new lease, is valid. In the opinion it is said:

"The original Garrison lease extended from January 1, 1903, to January 1, 1907. The second or Hulquist lease was executed on May 31, 1904, and extended from January 1, 1906, to January 1, 1909, and was therefore for a term of less than five years from the date on which it was executed. This is important. It will be observed that this is not a case of the Indian making a lease for a term to commence *in futuro* and extending for a period of five years from the commencement of the lease. It is a case of a lease being made while another valid lease is outstanding and to a different lessee, to commence *in futuro,* and not extending to a time in excess of five years from the date on which the lease is made."

In the case at bar the conditions said to be important in this case exist, for here the lease for one year had not expired, and the new lease for five years commenced from January 1, 1910, and not from its date, October 29, 1909, and therefore it does extend the time for more than five years from the date on which the lease was made. The next case passing on this question is *Gladney v. Richardson,* 44 Okla. 104, 143 Pac. 683, and that case decides that a lease executed by a citizen of the Choctaw Nation during the life of a prior and valid lease, but which does not exceed the aggregate of five years from the date of the new lease, is valid. It will be noted that the term must not exceed five years from the date of the second lease.

It now remains to be seen how far these cases conflict with the decision of the Supreme Court of the United States, in *United States v. Noble, supra.* In that case the matter considered was the overlapping leases given by a Quapaw Indian. The laws construed are as follows:

" 'Provided that said allotments shall be inalienable for a period of twenty-five years from and after the date of said patents.' By the act of June 10, 1896, c. 398, 29 Stat. L. 321, 331, Congress authorized the allottees of lands, within the limits of Quapaw agency, 'to lease the same for a term not exceeding three years for farming purposes, or five years for mining or business purposes.' * * * By the act of June 7, 1897, c. 3, 30 Stat. L. p. 62," it was provided " 'that the allottees of land within the limits of the Quapaw agency, Indian Territory, are hereby authorized to lease their lands, or any part thereof, for a term not exceeding three years, for farming or grazing purposes, or ten years, for mining or business purposes. And said allottees and their lessees and tenants shall have the right to employ such assistants, laborers, and help from time to time as they may deem necessary.' "

Under these statutes, the Indian gave: (1) A lease dated January 11, 1902, for ten years from that date; (2) a lease to the same lessee dated August 24, 1903, for ten years from date; (3) a lease dated March 25, 1905, to other parties for ten years from date; (4) a lease dated April 4, 1905, to other parties for ten years from date; (5) a lease dated May 12, 1906, to the same party as in the fourth lease, for ten years from date; (6) a lease dated July 28, 1906, to the same parties as in the fourth and fifth leases, for 21 years from date. These were all mineral leases. In holding these overlapping leases void, the court says:

"The lease here in controversy was made on March 25, 1905, for ten years from date (paragraph 3). The property was already subject to a lease concededly valid, for ten years from January 11, 1902. The lease under which the appellee claims is what is known as an 'over-lapping lease.' It is not necessary to describe transactions of this character, for they are abundantly illus-

trated in the record which shows that this allottee made six leases of the same rights in less than five years, each for ten years, from date, with the exception of the last, which was for 20 years, and all reserving substantially the same rents and royalties which were reserved in the first lease at a time when the property had not been prospected. The practice, to say the least, is an abnormal one, and it requires no extended discussion to show that it would facilitate abuses in dealing with ignorant and inexperienced Indians. It is urged, however, that the manner of dealing with the Indians, in gradually releasing them from guardianship and preparing them for complete independence, is for Congress to determine; that Congress has in this case authorized a lease for ten years; that this was a lease for ten years and no longer, and hence was within the authority; and that, however wise it might have been to prohibit 'overlapping leases,' Congress did not so provide.

"We are of the opinion that this is too short a view. The question is as to the scope of the authority given by Congress; that is, whether it did not extend simply to leases in possession, and should be taken not to include 'leases in reversion.' The allottee, as we have seen, is under an absolute restriction, with respect to his reversion for a period of 25 years from the date of his patent. In the light of this restriction, and of the governmental policy which induced it, there is sound reason for construing the power as not authorizing anything more than a lease in possession, as well understood in the law. At common law, as the government points out, it was the established doctrine that a tenant for life, with a general power to make leases, could make only leases in possession, and not leases in reversion or *in futuro*. He was not authorized by such a power to make a lease to commence 'after the determination of a lease in being.' Such a lease was deemed to be 'reversionary.' *Sussex v. Wroth,* Cro. Eliz. pt. 1, p. 5; *Shecomb v. Hawkins,* Cro. Jac. 318, Yelv. 222; *Winter v. Lovelady,* 1 Comyns, Rep. 37; Sugden on Powers, p. 749; 4 Greenleaf's Cruise, Dig. 165,

166; *Taussig v. Reel,* 134 Mo. 530, 544-547, 34 S. W. 1104; Woodfall, Land. & T. (10th Ed.) 239, 244, 245. 'A general power to lease for a certain number of years without saying either in possession or reversion only authorizes a lease in possession, and not *in futuro.* Such a power receives the same construction as a power to make leases in possession. What is expressed in the one is understood in the other.' *Shaw v. Summers,* 3 J. B. Moore, 196. This is not to say that an agreement for a new lease, at a fair rental, made shortly before the expiration of an existing lease, would not be sustained in equity. See *Dowell v. Dew,* 1 Younge & Ch. Cas. 345. 12 L. J. Ch. N. S. 158, 7 Jur. 117."

Does the last clause of this extract from the opinion, that an agreement for a new lease at a fair rental, made shortly before the expiration of an existing lease, would be sustained in equity, take this case from under the general rule there laid down? We think not, because in the present case the new lease was for five years, to begin on January 1, 1910, which extended for more than five years from the date of the lease. We do not decide that a valid agricultural lease cannot be made during the life of an existing valid lease, but in no event can one be made to the tenant in possession, beginning in the future and extending the term for more than five years from the date of the lease.

In *Dowell v. Dew,* 1 Younge & C. Ch. Cas. 345, also reported in 7 Jurist (1843) 117, cited in the Noble Case, it is said:

"It is true that in this instance the interval is considerable, but the reasons assigned for it appear to be satisfactory, namely, that it was material, in order to regulate the course of cultivation which was to be pursued in the subsequent year, that the tenant should know what he had to depend on in respect to the future."

This, in our opinion, is the true rule in cases of this character. An agricultural lease may be made during the existence of a valid unexpired lease, but only for a fair rental, and near the expiration of the valid lease, that the tenant may know what he has to depend upon for the ensuing year, but in no case can such lease be for a period of five years, to begin in the future.

We therefore recommend that the judgment be affirmed.

By the Court: It is so ordered.