APPLE *et al.* v. PIERCE *et al.*

No. 4683. Opinion Filed February 29, 1916.

(155 Pac. 892.)

1. **INDIANS—Restricted Homestead Allotment—Validity of Lease.** Where a valid lease by a Chickasaw citizen of his restricted homestead allotment is made for agricultural purposes, and before it expires another lease for agricultural purposes is made to the same lessees for a period of one year, to commence in the future, the last lease, not being approved by the Secretary of the Interior, is void.

2. **SAME—Agricultural Lease—Failure to Record—Effect on Validity.** Where a written agricultural lease of a full-blood Chickasaw Indian for a term of one year (1911) covered both homestead and surplus, same is not void because it was never recorded in the office of the register of deeds.

(Syllabus by Watts, C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by S. A. Apple and another against G. W. Pierce and others, composing the firm of Westheimer & Daube. Judgment for defendants, and plaintiffs bring error. Affirmed in part, and reversed in part.

*J. A. Bass,* for plaintiffs in error.

*J. C. Thompson,* for defendants in error.

Opinion by WATTS, C. On October 5, 1911, S. A. Apple and Wirt Franklin filed their petition in the dis-

trict court of Carter county, against G. W. Pierce, alleging
that they had a legal and an equitable estate in and to the
S. ½ of S. E. ¼ of section 26 (homestead) and the N.
½ of N. E. ¼ and N. ½ of S. W. ¼ of N. E. ¼ of sec-
tion 35 (surplus), all in township 3 N., range 1 E., and
were entitled to immediate possession thereof; that they
had been damaged in the sum of $700 by the defendants'
unlawfully withholding possession; that the defendants had
unlawfully kept them out of possession for the past year
and were using the rents and profits thereof, praying dam-
ages, possession of the lands, etc. November 4, 1911,
Max Westheimer and David Daube, composing the firm
of Westheimer & Daube, filed motion to be made parties
defendant, which was ordered, and on February 14, 1912,
defendant Pierce filed a disclaimer; and on the same date
defendants Westheimer & Daube filed their answer to
the plaintiffs' petition denying generally all the allegations
thereof, and specifically denying that plaintiffs had a law-
ful estate in fee simple in and to the land; and their right
of possession, that they had been damaged, and that de-
fendants had kept plaintiffs out of possession, and alleging
that they were informed and believed that the plaintiffs
purchased the land in controversy from the guardian of an
heir of the allottee, Monroe Wolfe, that the guardianship
sale was not made in accordance with the law, and that
no title passed to the plaintiffs, praying that plaintiffs take
nothing, and that they recover their costs. The lease con-
tract attached to and made a part of defendants' answer
was dated and acknowledged January 19, 1910, and grants
the land for a period of one year, commencing January
1, 1911, ending December 31, 1911, and further provides
for a rental of $85 per annum, $10 to be paid on the date
of delivery of the instrument, but is silent as to when the

remaining amounts would be paid. On May 14, 1912, plain-
tiffs replied by generally denying all the allegations, except
certain admissions, to wit, that they bought the land the
————day of ————, 1911, as alleged in defendants'
answer, but denied that the sale was irregular, not in ac-
cordance with the law, and that the title did not pass, and
further denying that defendants were in possession of
the land as alleged, and praying judgment as in the orig-
inal petition. On June 28, 1912, the cause was tried to the
court without the intervention of a jury. The court de-
creed that plaintiffs take nothing and that the defendants
have judgment for costs. Plaintiffs filed motion for new
trial, which was overruled and exception taken, and plain-
tiffs appeal.

There is but little conflict in the evidence. Briefly,
it shows that Monroe Wolfe, the allottee, was a full-blood
Chickasaw Indian; that the land in controversy was a
portion of his allotment, and that he died seised thereof
on or about May 25, 1911, leaving a widow and a half-
brother, full-blood Chickasaws, as his sole surviving heirs;
that plaintiffs purchased the land from the heirs in a
proper court proceeding, evidenced by the execution of
deeds of conveyance during the month of August, 1911.
In the lifetime of the allottee he executed certain written
rental contracts, which for convenience will be designated
as Nos. 1, 2, 3, and 4, to wit: (1) June 3, 1903, to R.
Hardy for five years from date, covering surplus and
homestead, filed for record June 3, 1903; (2) August 14,
1908, to C. R. Smith for five years from date, covering
the homestead and surplus, filed for record August 14,
1908; (3) June 30, 1910, to Westheimer & Daube for five
years from January 1, 1912, covering the surplus, filed for
record July 8, 1910; (4) January 19, 1910, to Westheimer

& Daube from January 1, 1911, to December 31, 1911, not of record. This lease describes the N. ½ of the N. E. ¼ section 35, and the S. ½ of the S. E. ¼ of section 26, all in township 3, range 1, but omits the 20 acres described as the N. ½ of the S. W. ¼ of the N. E. ¼ of section 35, township 3, range 1.

Lease No. 2 was given as security for a loan of $60 which was paid by Westheimer & Daube December 31, 1908, evidenced by a written release delivered to Westheimer & Daube and held by them but not of record. September 5, 1911, C. R. Smith also released and assigned lease No. 2 to the plaintiffs, which lease was filed for record on the same date. Westheimer & Daube had been in possession of all of the land under lease contracts from the allottee from and including 1908 to the date of the trial, and kept up the improvements, in addition to the rental. None of the leases were approved by the Secretary of the Interior.

Plaintiffs introduced leases Nos. 1, 2, and 3, and defendants Nos. 2 and 4.

1. No. 1 lived its time, and, having expired June 3, 1908, had no bearing upon the issues. No. 2 seems to have been given as security for a loan which was paid and said lease released to all parties and treated as canceled, and we will so consider it here. No. 3, being unexplained, is suspicious in many respects, but according to its own terms was dated June 30, 1910, and did not begin to run until January 1, 1912. Its validity is not necessary to a decision. We therefore think that upon No. 4 the controversy hinges. According to defendants' own evidence, they had been in possession of the land under lease contracts (whether written or oral, for one year or more,

they did not attempt to show) from and including 1908. Then the question arises: Could the allottee, being a full-blood Chickasaw, on January 19, 1910, the date of No. 4, with a then existing lease, make a valid lease of his allotment beginning January 1, 1911, ending December 31, 1911? We answer as to the surplus, yes; the homestead, no.

It will be readily seen that No. 4, in so far as the homestead is involved, is in the face of the Act of May 27, 1908, c. 199 (35 Stat. L. 312), and violates not only the spirit but the letter of the law. It provides:

"Sec. 2. That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed, may be leased by the allottee if an adult, * * * for a period not to exceed five years, without the privilege of renewal: Provided, * * * leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise. * - * *"

"Sec. 5. That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act shall be absolutely null and void."

*Hudson v. Hildt*, 51 Okla. 359, 151 Pac. 1063, is decisive of this case. The surplus was involved, but the same principle is applicable to a homestead.

Accordingly, we must hold that where a valid lease by a Chickasaw citizen of his restricted homestead allotment is made for agricultural purposes, and before it expires another lease for agricultural purposes is made to the same lessees for a period of one year, to commence in the future, the last lease, not being approved by the Secretary of the Interior, is void. See, also, *Apple et al. v. Westheimer & Daube,* 55 Okla. 532, 155 ·Pac. 623, and *Reirdon v. Smith et al.* (not yet officially reported) 161 Pac. 798.

In support of defendants' contention that the allottee, notwithstanding he made a lease of his homestead for 1910, could during the same year make another lease to defendants for 1911, counsel cite *Darnell v. Hume et al.,* 40 Okla. 668, 140 Pac. 775, wherein the court held:

"A lease or contract of rental, whether in writing or parol, for a period of one year beginning a day in the future. is valid."

But a review of the case disposes of it as authority favorable to defendants, except as to the surplus. The facts were that one of the defendants, in the year 1909, entered into a written contract with a half-blood Creek citizen for her homestead for five years beginning in 1910; that he went into possession under the lease and, learning his contract was void, on August 6, 1910, made a new, short written contract for 1911. The validity of the new contract was litigated and it was held valid. The old contract was not an issue before the court. The fact that the prior contract was void did not prevent a new, valid contract being made. That case differs from the one at bar, in that defendants in this case held what we assume was a valid prior contract for the year 1910, and during the pen-

dency thereof made the contract for 1911, while, in the case cited, the prior contract was void and there was no reason why a valid, new contract could not be made. *Whitham v. Lehmer*, 22 Okla. 627, 98 Pac. 351.

In the case at bar the fact of the 1910 contract being valid renders the 1911 contract, so far as the homestead is involved, invalid. But·as the 1911 contract only ran for one year, there was no violation of the inhibition against leasing ·the surplus.

2. Plaintiffs contend that, because lease No. 4 was never recorded in the office of the register of deeds of Carter county, it was void *in toto*, and quote the Atoka Agreement:

"No allottee shall lease his allotment, or any portion thereof, for a longer period than five years, and then without the. privilege of renewal. Every lease which is not evidenced. by writing, setting out specifically the terms thereof, or which is not recorded in the clerk's office of the United States court for the district in which the land is located, within three months after the date of its execution, shall be void, and the purchaser or lessee shall acquire no rights whatever by an entry or holding thereunder. And no such lease or any sale shall be valid as against the allottee unless providing to him a reasonable compensation for the lands sold or leased." (Act June 28, 1898, c. 517, 30 Stat. L. 495, 507.)

The above act, however, was modified by Act April 26, 1906, c. 1876, 34 Stat. 137, 145:

"Sec. 20. That after the approval of this ·act· all leases and rental contracts for not exceeding one year for agricultural purposes for lands other than homesteads, of full-blood allottees of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole Tribes shall be in writing and subject to approval by· the Secretary of the Interior and shall be

absolutely void and of no effect without such approval: Provided, that allotments of minors and incompetents may be rented or leased under order of the proper court: Provided further, that all leases entered into for a priod of more than one year shall be recorded in conformity to the law applicable to recording instruments now in force in said Indian Territory."

From the foregoing, it seems plain that one year agricultural contracts in which homesteads were included were excepted from the general provision. It therefore follows that, where a written agricultural lease of a full-blood Chickasaw Indian for a term of one year (1911) covered both homestead and surplus, same is not void because it was never recorded in the office of the register of deeds.

We therefore recommend that the judgment of the trial court, so far as the lands described as the homestead, and that part of the surplus, to wit, N. ½ of the S. W. ¼ of the N. E. ¼ of section 35, township 3, range 1, are involved, be set aside and a new trial granted; but, as to the balance of the surplus as herein described, the judgment be affirmed, and that the plaintiffs pay four-ninths and the defendants five-ninths of the cost of the appeal.

By the Court: It is so ordered.