**DOWELL et al. v. BROWN, Guardian.**

No. 11280—Opinion Filed June 6, 1922.

(Syllabus.)

**1. Indians — Restricted Lands—Overlapping Leases—Validity.**

Where a valid lease by a Creek citizen of her restricted allotment is made for agricultural purposes, and before it expires two other leases for agricultural purposes are made to the same lessee, to begin in the future, one for a period of one year and the other for a period of three years, neither of which was approved by the authority of the Secretary of the Interior, both of said leases are void, because in violation of sections 2 and 5 of act of Congress of May 27, 1908.

**2. Same.**

Where a lease was executed on December 6, 1913, by a full-blood Creek Indian woman on her restricted surplus allotment, to commence on the 6th day of December, 1918, at a time when a valid prior lease executed by her to the same lessee, covering the same premises, yet had more than four years to run, and thereafter, on March 8, 1916, the allottee executed to the same lessee another lease to begin on December 6, 1918, and to run to March 8, 1921, and at a time when said valid lease had more than 20 months yet to run, neither of which subsequent leases was approved by the authority of the Secretary of the Interior, and it not being shown that it was necessary to make the new leases at such time in order to regulate the course of

cultivation that was to be pursued the subsequent year, such leases were void.

**3. Same — Void Leases — Right of Lessee to Recover for Improvements.**

One who seeks to hold Creek Indian lands under agricultural leases that are void, because the same were executed in violation of the laws of the United States regulating the leasing of Indian lands for agricultural purposes, cannot recover for improvements made and cannot offset a claim for rents by value of such improvements.

**4. Same—Judgment in Ejectment—Affirmance.**

Record examined, and held, that the same fails to show reversible error, and the judgment of the trial court is affirmed.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action in ejectment by Joseph William Brown, as guardian of Annie Mathew Longhorn et al., minors, against Wm. Dowell and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Don W. Walker and Frank P. Smith, for plaintiffs in error.

Burt & Keenan, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Creek county; Hon. Lucien B. Wright, Judge.

On the 24th day of February, 1919, Joseph William Brown, as guardian of Annie Mathew Longhorn, Leone Longhorn, Wanita Longhorn, and Edward Franklin Longhorn, minors, commenced an action in ejectment against William Dowell, Bob McAllister, and Ed Hutchinson in the district court of Creek county to recover the possession of the land described in the plaintiffs' petition and $400 damage for the withholding possession of the said premises, including rents and profits arising therefrom. A jury was waived by the parties and the cause tried to the court, which resulted in a judgment in favor of the plaintiffs for the possession of the premises and $520, the rental value of the premises for the years 1918 and 1919.

For convenience, the parties will hereinafter be referred to as plaintiffs and defendants, respectively, as they appeared in the trial court. The defendants filed a timely motion for a new trial, which was overruled by the court, and thereafter commenced this proceeding in error to reverse the judgment of the trial court. The defendants' assignments of error are as follows:

"(1) The court erred in overruling defendants' motion for a new trial.

"(2) The court erred in rendering judgment in favor of plaintiffs and against defendants, for 'that it is not sustained by the evidence, and is contrary to law.

"(3) The court erred in its special findings of fact and conclusions of law.

"(4) The court erred in finding specially that the lease of date December 6, 1913, was null and void.

"(5) The court erred in finding specially that since December 31, 1917, the defendant has been and is a tenant by sufferance.

"(6) The court erred in finding specially that plaintiffs were entitled to the immediate possession of the premises.

"(7) The court erred in finding specially that the rental value of the premises in question for the years 1918 and 1919 was $360 per year.

"(8) The court erred in rendering judgment against defendants for $720 rental for the premises in question for the years 1918 and 1919.

"(9) The court erred in rendering judgment against defendants for the sum of $360 as rental for the year 1919, and then rendering judgment against defendants for the immediate possession of the premises.

"(10) The court erred in that it sustained objections made by plaintiffs to the offer of evidence made by defendants, which evidence so offered was competent, relevant, and material; and to which action of the court defendants saved their exceptions.

"(11) The court erred in that it permitted plaintiffs to introduce evidence over objections by the defendants, which evidence was wholly incompetent, irrelevant, and immaterial."

Plaintiffs' petition alleges, in substance, the following: That the plaintiffs are minors, and Joseph William Brown is their legal guardian. That plaintiffs are the sole heirs of Commessee, who is a full-blood citizen of the Creek Nation, and that they inherited her surplus allotment, the possession of which is in issue in this action. That Commessee died intestate, and without issue on the 18th day of October, 1918. That on the 6th day of December, 1913, she leased said lands to the defendant Dowell for a term of five years, ending December 6, 1918, for agricultural purposes. That on the 8th of March, 1916, she made a certain other agricultural lease covering said lands, in favor of said defendant, to begin the 6th day of December, 1918, and to expire on March 8, 1921, and alleging that said latter lease was meant to be an extension of said

former lease. Plaintiffs alleged that said latter lease is null and void, for the reason that it was an extension of the former lease, and had not been approved by the Secretary of the Interior as required by the act of Congress of May 27, 1908. That defendant has withheld possession of said premises, wrongfully and unlawfully, since the 6th day of December, 1918, and appropriated the rents and profits therefrom, to the damage of plaintiffs in the sum of $400. For a second cause of action plaintiffs allege that defendants claim some right, title, or interest in said premises adverse to plaintiffs' title therein, but that defendants' pretended interest is void, and should be canceled as a cloud on plaintiffs' title. They ask for the possession of said lands, and the sum of $400 as damages, and for the cancellation of defendants' lease. Copies of the leases above mentioned are attached to the petition as "Exhibit B" and "C" thereto.

Defendants' answer to the petition alleges the following in substance: That Commessee was the owner of the lands involved, at the time alleged in plaintiffs' petition. That on the 27th of September, 1912, she executed and delivered to defendant Dowell an agricultural lease covering said lands, whereby she leased the same to defendant for a term beginning the 1st day of January, 1913, and expiring on the 31st day of December, 1917. That defendant took possession of the premises under said lease, and paid the cash rental provided for therein, in the sum of $60 per year; as a further consideration for said lease he agreed to repair the house and fence on said premises, which he did. That on December 6, 1913, Commessee executed and delivered to him another lease for a term beginning the 1st day of January, 1918, and ending the 6th day of December, 1918, for a consideration of $60 cash, paid to her at the time of the execution thereof. That on March 8, 1916, she executed and delivered to him another lease covering s id lands, for a term beginning December 6, 1918, and ending March 8, 1921, for a consideration of $200, paid to her at the time of the execution and delivery thereof. That after the execution and delivery of the last mentioned lease, Commessee requested him to grant her a further consideration for said lease by repairing the buildings, fences, and other improvements on the premises. This he agreed to do, and pursuant to the agreement he placed valuable and lasting improvements thereon, as detailed in his answer. That he took the lease of date March 8, 1916, at the solicitation of Commessee

and her husband; that they represented to him that they had sickness in their family, and needed money to provide medical aid and medicine, and that they were not in a position, financially, to improve said lands, and they desired him to do so, and wanted him to remain upon the property for a term of five years from that date. That when he took possession of said premises, no part was in cultivation, and the only improvements thereon consisted of a dilapidated log house. That only 61 acres could be cultivated, and this he cleared and placed in cultivation, and during the period beginning the 27th of September, 1912, and ending the 9th day of May, 1919, which was the date of the filing of plaintiffs' petition, he expended approximately $1,400 as rental in money and repairs and improvements. He denied that the lease of date March 8, 1916, is void, or that plaintiffs are entitled to possession of said premises, or to any sum of money as rental or damages. He states, however, that in the event that the court should determine and adjudge that said lease is void, he still has the right to remain upon said premises as a tenant at will; alleging in said connection that no notice to quit was served upon him before the 1st day of January, 1919, or at any other time; and that he was in possession of said premises as Commessee's tenant, and having been permitted to hold over, without the service of said notice, he is entitled to remain in possession thereof, from year to year, at the same rental per year which he had been paying, and until given the statutory notice to vacate. Defendants deny that the rental value of the premises is $400 per year, but allege it to be $100, and no more.

The trial court made separate findings of fact and conclusions as follows:

"That upon the 31st day of December, 1917, the defendant Dowell was lawfully in possession of the premises under a valid and subsisting lease; that the defendant Dowell remained in possession of said premises thereafter and is now in possession and has continued to be in possession since December, 1917, as the tenant of the owner thereof, Commessee; that the rental value of said premises for the year 1918 was the sum of $360; that the rental value of said premises for the year 1919 was the sum of $360. The court further finds as a matter of fact that the defendant Dowell, at the solicitation of Commessee, the owner of said premises, on or about March 8, 1916, advanced to said Commessee the sum of $200. The court concludes as a matter of law that the possession of the defendant Dowell since December 31, 1917, has been that of a tenant

by sufferance, without any special contract with the owner of said lease; that he is indebted to the plaintiffs in this case in the total sum of $720, the same being the rental value of said premises for the years 1918 and 1919; and that he is entitled to a credit thereon of the sum of $200, leaving a balance due to the plaintiffs in this case by the defendant Dowell of $520. * * * The court finds that the plaintiffs in this case are the children and the sole heirs at law of the allottee, Commessee, and that Joseph William Brown is the duly appointed, legally qualified, and acting guardian and was such at the time of the filing of the petition in the cause."

The court's separate conclusions of law were that:

"The lease executed September, 1912, for the period expiring December 31, 1917, is a valid lease, and that the lease executed December 6, 1913, and the lease executed March 8, 1916, are void."

Counsel for defendants discuss in their brief the foregoing assignments of error under two propositions, concerning which they say:

"We have stated eleven assignments of error, but believe that the matter can be disposed of under two general heads, namely: First. We will contend that the lease which the plaintiffs seek to have canceled in this action is not, under the peculiar facts and circumstances surrounding the same, void as being violative of the restrictions contained in the act of May 27, 1908. Second. If said lease should be found to be void, then defendant asserts that under the laws of this state and the decisions of this court he was a tenant at will of plaintiffs at the time of the institution of this suit, and as such was entitled to retain possession of the premises involved in this action.

"There is no controversy between the parties respecting the execution and delivery of the leases covering the premises involved in this action.

"As shown in our statement of the case, the defendant went into possession of the premises on or about the 1st day of January, 1913, under a lease dated the 27th day of September, 1912, and for a term beginning on January 1, 1913, and ending on December 31, 1917. He was in possession of the premises at all times thereafter, claiming under said lease, and later under two other leases, the first of which was taken on the 6th day of December, 1913, providing for a term beginning the 1st day of January, 1918, and ending the 6th day of December, 1918. And, the last lease being of date March 8, 1916, for a term beginning December 6, 1918, and ending March 8, 1921."

It is conceded that Commessee was a full-blood Creek Indian and that the land in

controversy was her surplus allotment, and that she was a restricted Indian and that the land was likewise restricted. That the original lease dated September 27, 1912, to begin January 1, 1913, and to expire December 31, 1917, was a valid lease, and that the rents stipulated for therein were paid by the lessee. It is also conceded that Commessee executed the lease dated December 6, 1913, which by its term was to begin the first day of January, 1918, and extend to the 6th day of December, 1918, and contained the following provisions:

"That this lease is meant to be, and is, an extension of a former lease covering the above described land, dated September 27, 1912, expiring December 31, 1917, and is in no wise to be considered as a cancellation of said prior lease."

It is further conceded that Commessee executed the lease dated March 8, 1916, to begin on the 6th day of December, 1918, and to run to the 8th day of March, 1921, for a stipulated rental of $200, which was paid. And this lease contained the following stipulation:

"That this lease is meant to be, and is, an extension of a former lease covering the above described land, dated December 6, 1913, expiring December 6, 1918, and is in no wise a cancellation of said prior lease."

It is therefore clear that at the time the second lease was executed, to wit, December 6, 1913, the first lease, which was for five years, had yet a little more than four years to run, and that the second lease by its terms extended the first lease practically another year, or to the 6th day of December, 1918. Also at the time the third lease was executed, to wit, on March 8, 1916, to begin on December 6, 1918, and to run to March 8, 1921, it was intended to extend the period of the first lease to the latter date, and at the time the same was executed the first lease was valid and subsisting, and had by its terms not expired by a little more than 20 months. Hence, it seems clear to us that the second and third leases were overlapping leases, neither of which had been approved by the authority of the Secretary of the Interior, as provided in sections 2 and 5 of the act of Congress of May 27, 1908, chapter 199 (35 Stat. 312), which are as follows:

"Sec. 2. That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed, may be leased by the allottee, if an adult, * * * for a period not to exceed five years, without the privilege of renewal: Provided, * * * leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise. * * *"

"Sec. 5. That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act shall be absolutely null and void."

These provisions have frequently been construed by this court in cases where the facts were quite similar to the facts in the instant case. That is, in instances where leases were made by the same lessor, subsequent to the making of a valid lease, and during the time the same was in force, which extended the term of such valid leases. And in each instance the court held that subsequent leases were void. In the case of Hudson v. Hildt, 51 Okla. 359, 151 Pac. 1063, this court in syllabus parag. 1 stated as follows:

"Where a lease by a Creek citizen of his restricted allotment is made for agricultural purposes, and before it expires another lease for agricultural purposes is made by the same lessee for a period of five years, to commence in the future, the last lease not being approved by the Secretary of the Interior, held, the last lease is void."

In the case of Apple v. Westheimer, 55 Okla. 532, 155 Pac. 623, discussing the facts of that case, which were very similar to the facts in the instant case, the court said:

"Defendants insist that, by reason of their actual 'possession' at the time plaintiffs purchased, they had 'rights and equities,' regardless of the leases, which protected them against plaintiffs' demand.

"In a case of this kind, under the facts, such argument is not only inconsistent, but has neither length nor breadth. Of the many phases of Indian lease questions decided by this court, not one can be found supporting defendants' view. Defendants' possession, right, and equities, as they designate them, in order to be such in fact, must depend on some prior, lawful, actual, contractual relations, or at least grow out of some act or relation not unlawful; otherwise, by circumvention, an object could be accomplished by indirection which could not be accomplished by direction. One could be guilty of the most flagrant violation of the

inhibition imposed in reference to leasing full-blood Indian lands, and by artifice accomplish just what Congress intended to forbid. * * *

"We therefore hold that, as defendants were holding under the agricultural lease dated January 19, 1910, to run for the year 1911, the lease dated June 30, 1910, to defendants, to run for five years from January 1, 1912, was void and in violation of the acts of Congress, supra."

See, to the same effect: Apple v. Pierce, 56 Okla. 13, 155 Pac. 892; Reirdon v. Smith, 62 Okla. 48, 161 Pac. 798; Boxley v. Scott, 62 Okla. 152, 162 Pac. 688; Mullen v. Noah, 64 Okla. 181, 166 Pac. 742; Mullen v. Carter, 68 Oklahoma, 173 Pac. 512; Brown et al. v. Van Pelt, 64 Okla. 109, 166 Pac. 102; United States v. Noble, 237 U. S. 74, 59 L. Ed. 844.

This disposes of counsel's first contention, and adversely thereto. The trial court correctly held that the second and third leases involved herein were void. Counsel's second contention is that if said lease should be found to be void, then the defendant was a tenant at will of plaintiffs at the time of institution of this suit, and as such was entitled to retain possession of premises. We think that there is no merit in this contention; the leases in question being void, the defendant could claim no rights thereunder. The original lease expired by its own terms December 31, 1917, which was the time for the termination of the tenancy specified in the lease.

Section 3791, Rev. Laws 1910, provides as follows:

"When the time for the termination of a tenancy is specified in the contract, or where a tenant at will commits waste, or in the case of a tenant by sufferance, and in any case where the relation of landlord and tenant does not exist, no notice to quit shall be necessary."

In the case of Wrigley et al. v. McCoy et al., 73 Oklahoma, 175 Pac. 259, this court held, syllabus parag. 5, as follows:

"One who holds Choctaw Indian lands under a deed void, because same was executed prior to removal of restrictions against sale of such lands, cannot recover as an occupying claimant for improvements made and cannot offset a claim for rents by value of such improvements."

In the body of the opinion, the court said:

"The next and last question is whether or not the court erred in refusing to allow defendant Wrigley the benefit of the Occupying Claimants' Act, and in refusing to

him to offset the claim for rents to the extent of the value of the improvements. We are of the opinion, as before stated, that the defendant Wrigley occupied no other status than that of a mere trespasser upon Indian lands, being lands in which the United States and the Indians in question were interested. * * * It follows that, if the defendant in this case should have the benefit of the Occupying Claimants' Act, the land would be incumbered in violation of the laws of the United States to the extent awarded by the appraisers, jury, or court, and the court would be without power to grant such relief to the claimant. There is no contract, express or implied, to pay for the value of the improvements, and the same cannot be offset against a claim for rents. By permitting such offset the defendant would be recognized as occupying a status with reference to Indian lands which is not warranted by statute or decisions of the courts."

The reasons above given in that case, where the deed was void and the whole estate in the property involved, and in the instant case, where the leasehold estate is involved, are analogous and the valid lease thereto contained no provision for making improvements or payment therefor, but did provide that the lessee agreed to repair fence and house on the premises, and, in addition thereto, was to pay a rental value for the premises of $60 per annum for the period of five years. And the valid lease having expired by its own terms, as hereinbefore stated, on the 31st day of December, 1917, and as the lessee held over thereafter and used the premises for the years 1918 and 1919, being in effect at most a tenant by sufferance, he became bound to the owner for the rental value of the premises for said years, and the owner being under no contract, either expressed or implied, to pay for the value of improvements, such tenant could not offset the value of the same against the claim of the owner for rents. And in such situation, the fact that improvements may have been made by the tenant, and if any, the value of the same, were immaterial, and the trial court committed no error in sustaining the objections of the plaintiffs to the defendant's offer to show that certain improvements had been made by him, and the value thereof.

The trial court found as a fact that the rental value of the premises was $360 for each of said years, aggregating the sum of $720, and that the defendant had paid the deceased lessor, Commessee, the sum of $200, which he credited on the amount of rent, and rendered judgment in favor of plaintiffs for the difference, the

sum of $520, of which action of the trial court in allowing said credit the plaintiffs do not complain.

From an examination of the record, we find that the evidence amply supports the trial court's findings of fact, and we are, therefore, without authority to reverse same, and such findings are, therefore, approved. There being no reversible error shown in the record, the judgment of the trial court is affirmed.

KANE, MILLER, and ELTING, and NICHOLSON, JJ., concur.