### GLADNEY v. RICHARDSON *et al.*

No. 3518.  Opinion Filed October 13, 1914.

(143 Pac. 683.)

**INDIANS—Allotment—Lease—Validity.** Under Act June 28, 1898, c. 517, 30 St. at L. 495, and Act May 27, 1908, c. 199, 35 St. at L. 312, which provides that no allottee shall lease his allotment or any portion thereof for agricultural purposes for a longer period than five years and then without privilege of renewal, a lease executed by a citizen of the Choctaw Nation during the life of a prior valid lease, but which does not exceed in the aggregate the term of five years from the date of the new lease, is valid.

(Syllabus by Rittenhouse, C.)

*Error from District Court, Grady County;*

*F. M. Bailey, Judge.*

Action by. J. W. Gladney against E. A. Richardson and

others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*H. A. Ledbetter,* for plaintiff in error.

*Moore & Bass* and *Bond & Melton,* for defendants in error.

Opinion by RITTENHOUSE, C.  On November 2, 1904, Sina Nehka and Sam Nehka, full-blood adult citizens of the Choctaw Nation, leased their surplus allotments to the Bankers' Trust Company at Ardmore for five years for agricultural purposes.  Before this lease had expired, they leased the same premises to Julius Bowen for five years from the date of the execution of the lease, which was September 25, 1908, to September 25, 1913, for agricultural purposes.  An assignment was made of the Bowen lease to J. W. Gladney.  On the 21st day of April, 1909, Sina Nehka and Sam Nehka leased the same premises to M. J. Olsen for five years, commencing April 1, 1909, and ending April 1, 1914.  Action was brought by J. W. Gladney against Olsen and his subtenants, and the cause submitted to the court without a jury, and judgment was rendered for the defendants.

The first act relating to the leasing of Indian lands is that of June 28, 1898 (30 St. at L. 495, c. 517), wherein it is said:

"No allottee shall lease his allotment, or any portion thereof for a longer period than five years, and then without the privilege of renewal."

The subsequent acts of Congress on this subject were those of April 26, 1906 (34 St. at L. 137, c. 1876), and May 27, 1908. The Act of 1908, under which these leases were made, is as follows:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal:  Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of re-

stricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise. And provided further, that the jurisdiction of the probate courts of the State of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years." (35 St. at L. 312.)

There is no material difference in any of these congressional acts as to the right of the allottee to lease his surplus lands for agricultural purposes. The lease of the Bankers' Trust Company of 1904 expired November 2, 1909. Before its expiration the Gladney lease was made on September 25, 1908, for a term of five years, and the Olsen lease was made April 21, 1909, for the term ending April 1, 1914. Thus it will be seen that the leases held by Gladney and Olsen were each executed before the expiration of the lease to the Bankers' Trust Company, and each for a term of five years or less, without a renewal privilege of any character being contained in the lease contracts.

The only question presented by this appeal is whether a full-blood adult citizen of the Choctaw Nation can make a valid agricultural lease of the surplus lands for a term of five years or less, while there is a valid outstanding agricultural lease in the hands of a third party; or is the allottee compelled to wait until the expiration of the first lease before he can enter into a second lease? In the instant case all the leases were for five years or less, and the unexpired term of the lease held by the Bankers' Trust Company, added to the term of the Gladney lease, would not extend the period of the Gladney lease for more than five years, as the Gladney lease was given for a period of five years commencing on the day of its execution, which was about two years before the expiration of the lease of the Bankers' Trust Company. It is true that the Gladney lease overlapped the lease of the Bankers' Trust Company for a period of about two years; but as long as the aggregate outstanding terms do not ex-

ceed five years, the contracts, in respect to the question present-
ed here, are valid.  *U. S. v. Abrams* (C. C.) 181 Fed. 847; *U.
S. v. Noble,* 197 Fed. 292, 116 C. C. A. 654; *Scherer v. Hulquist,*
39 Okla. 434, 130 Pac. 544.   In the last-mentioned case, this
court, in construing section 17 of the act of June 30, 1902,
known as the Supplemental Creek Treaty (32 St. at L. 504, c.
1323), which provides that Creek citizens may rent their al-
lotments for strictly nonmineral purposes, for a term of not to
exceed one year for grazing purposes only, and for a period of
not to exceed five years for agricultural purposes, but without
any stipulation or obligation to renew the same, held that an
agricultural lease made under the provisions of said act while
another valid lease wos outstanding and to a different lessee, to
commence in the future, and not extending to a time in excess
of five years from the date on which the lease was made, was
valid.   This reasoning is applicable to the act under considera-
tion, and, where fraud or artifice is not shown, the lease will be
held valid.

The cause should, therefore, be reversed and remanded.

By the Court: It is so ordered.