## MULLEN et al. v. CARTER.

No. 5124—Opinion Filed Sept. 28, 1915.

On Rehearing, Jan. 8, 1918. On Second Petition for Rehearing, June 11, 1918.

(173 Pac. 512.)

1. **Ejectment — Trial — Separate Interests of Defendant — Consolidation — Judgment.**

Where a number of persons, in possession of separate parts of a particular tract of land, but having no common interest therein, are joined in an action in ejectment, including the entire tract, it would be proper for the court to order separate trials; and it may do this on its own motion, when it becomes apparent that the several parcels in controversy are separate and distinct, and that the several defendants rely upon different sources of title. But said defendants may file separate answers if they consent that the several actions may be consolidated and tried together. or if they do not object to such consolidation and trial; and in such case judgment may be rendered against all for the possession of the entire premises, instead of against each for the particular part he occupies.

2. **Ejectment — Judgment — Parties Defendant.**

In an action in ejectment where only the right of possession is involved, the person in actual occupation of the premises is always a necessary party defendant, and usually, and in such case, if judgment is recovered against the occupant. it binds those under whom he occupies as well.

3. **Same.**

Persons not in possession, when claiming possessory rights, are proper, but not necessary, parties defendant.

4. **Judgment — Conclusiveness — Landlord and Tenant.**

When a recovery is had against the tenant, the landlord is bound by it.

5. **Indians — Lease — Presumption and Burden of Proof.**

In an action involving the validity of a lease of an allotment of a citizen of the Choctaw Nation, where nothing appears to the contrary, the lessor will be presumed to be an adult at the time he made the lease, and one who relies upon his infancy to defeat his act has the burden of proof.

6. **Same — Defenses Admissible Under General Denial.**

The question as to whether an Indian is an adult, and thereby competent to enter into a lease contract. or otherwise alienate his allotment, constitutes a defensive matter, which is not available to the defendant under a general denial.

7. **Same—Validity of Lease—Approval.**

Section 2 of the Act of Congress of May 27, 1908, c. 199, 35 Stat. 312, provides: "That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise." Held, that under this section. where a full-blood Choctaw Indian had valid existing leases on his surplus and homestead allotments. which did not expire until the 31st day of December, 1911, additional leases made and dated on the 5th day of September, 1911, leasing his surplus lands for a period of five years, commencing on the 1st day of January, 1912, and his homestead allotment for a period of one year, commencing on the same day, without the approval of the Secretary of the Interior, are in contravention of this act, and therefore void.

(Syllabus by Robberts, C.)

On Second Petition for Rehearing.

(Syllabus.)

8. **Appeal and Error—Erroneous Exclusion of Evidence — Reversal and Remand for New Trial.**

In ejectment, where leases to a defendant were erroneously excluded on objection, the case should have been reversed and remanded by the Supreme Court for a new trial, in-

stead of with direction to render judgment for defendants on the evidence thus excluded.

**9. Indians—Surplus Allotment—Lease.**

Under Act Cong. May 27, 1908, owner may lease for a period not exceeding five years the restricted surplus allotment of a citizen of the Five Civilized Tribes, notwithstanding outstanding lease, if later lease is made near the termination of existing lease, and if necessary to regulate cultivation.

**10. Indians—Homestead Allotments—Lease.**

Under Act May 27, 1908, restricted homestead allotments may be leased for the ensuing crop year during existence of unexpired lease, the new lease to begin at the expiration of the existing lease, if made near the termination of the existing lease, and if necessary in the course of cultivation.

Error from District Court, Jefferson County; Frank M. Bailey, Judge.

Ejectment by W. F. Carter against J. S. Mullen and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

H. A. Ledbetter, for plaintiffs in error.

Jones & Green, for defendant in error.

Opinion by ROBBERTS, C. This case comes from the district court of Jefferson county. It is an ordinary action in ejectment, brought by defendant in error, W. F. Carter, against J. S. Mullen, John Harris, O. C. Walker, James A. Walker, John Eicher, Tom Cochran, and T. R. Harper, to recover possession of certain real estate situated in that county. It is not claimed that defendants are joint tenants or tenants in common, but that their occupancy is several, and of different parts of said land. To meet that contingency, the plaintiff alleges that he is unable to designate the particular part of the premises occupied by each of said defendants.

No objection or question as to misjoinder of parties or causes of action was raised below, and will therefore not be considered here. The practice in that particular seems to be settled by Judge Warvelle, in his work on Ejectment, in section 97, which reads as follows:

"If a number of persons are joined as defendants a question of much difficulty is presented where the parties, although in possession of parts of the land, have no common interest. It has been held, in such a case, that it is proper for the court to order separate trials, and that the court may do this on its own motion when it becomes apparent that the several parcels of land in controversy are separate and distinct and that the several defendants rely upon different sources of title. If this were not permitted, the rule allowing the plaintiff to join as defendants all who are in possession of the tract for which he sues would be productive of great inconvenience and injury.

"But while the foregoing will undoubtedly be the proper practice to pursue in the case of joint defendants claiming separate parts of the land under independent titles, yet, notwithstanding that they may file separate answers, if they shall consent that the several actions shall be consolidated and tried as one case, a judgment may be rendered against all for the possession of the entire premises, instead of against each for the part occupied."

Plaintiff also prays for an order restraining defendants from removing certain improvements from said premises, and for $750 damages for the wrongful detention of the same.

The defendants first answered by joint, general denial.

On the day of the trial the defendants O. C. Walker and T. R. Harper, by leave of the court, filed separate amended answers, claiming that they had placed certain improvements on the land with the knowledge and consent of the defendant J. S. Mullen, who was then in the possession of said premises, claiming under a lease from the allottee, with the express agreement with said Mullen that they should, and did, have the right to remove said improvements from the land at the termination of their leases. To these amended answers, general demurrers were filed by the plaintiff and overruled by the court. On the day set for trial the other defendants suggested the death of John Harris, and moved for a continuance of said cause, and for leave to make the heirs of said Harris parties defendant therein. Thereupon the plaintiff dismissed the case as to the said John Harris, and the court overruled the motion for continuance, and also the application to make the heirs of said Harris parties defendant; to which ruling of the court the other defendants at the time excepted. The case was tried to a jury, who returned a verdict in favor of the plaintiff, for the possession of the land, and for damages in the sum of $425 for the wrongful detention of the same. Motion for new trial was filed in due time and overruled by the court, to which exceptions were saved, and defendants bring error.

To obtain a reversal, the plaintiffs in error present ten assignments, as follows:

"First. The court erred in overruling the motion of plaintiffs in error for a new trial.

"Second. The court erred in forcing the plaintiffs in error into trial when it was made known to the court that John Harris, one of the defendants in the trial court, had died subsequent to the filing of the suit by the defendant in error without first having said cause revived as provided by statute.

"Third. The court erred in sustaining objections to evidence offered by plaintiffs in error which were excepted to at the time.

"Fourth. The court erred in overruling objections made by plaintiffs in error to testimony offered by the defendant in error, which were excepted to at the time.

"Fifth. The court erred in refusing to direct a verdict in favor of the plaintiffs in error, which was excepted to at the time.

"Sixth. The court erred in directing a verdict in favor of the defendant in error for the possession of the land.

"Seventh. The court erred in holding that the leases of the plaintiff in error J. S. Mullen were inferior to the leases of the defendant in error, which was excepted to at the time.

"Eighth. The court erred in refusing to give the instructions asked for by the plaintiffs in error, which was excepted to at the time.

"Ninth. The court erred in his instructions to the jury, which was excepted to at the time.

"Tenth. The judgment is contrary to the law and is contrary to the evidence, and is not sustained by the law and is not sustained by the evidence."

In passing upon the case, we will consider the assignments of error in the following order and groups, the reasons for which we think will be apparent from the manner in which we dispose of the several subjects:

First. The second assignment.

Second. The third and fourth assignments.

Third. The eighth and ninth assignments.

Fourth. The first, fifth, sixth, seventh, and tenth.

The second assignment is, in substance, that the court erred, on the suggestion of the death of the defendant John Harris, in refusing to revive the case in the name of his heirs, and in not making said heirs parties to said cause.

The contention of counsel in this behalf depends entirely upon whether John Harris was a necessary party to the case. Undoubtedly, if he was, it was error on the part of the court in refusing to revive the case in the name of his heirs, and also error in refusing to continue the case to make such heirs parties. But was Harris a necessary party? The petition alleges that:

"The defendants J. S. Mullen and John Harris have, through purported tenants, unlawfully withheld the possession of said premises from the plaintiff, since January 1, 1912, and are setting up some kind of title to said premises, which claim is, however, fraudulent and void."

Harris answered by general denial. In the motion to revive, and to make the heirs of Harris parties to the case the other defendants say:

"They are holding the lands described in plaintiff's petition under contract made with John Harris during his lifetime."

The entire record shows that the title to this land is in Davis Wesley, a full-blood minor, Choctaw Indian, who holds it under, and as, an allotment. So there is no dispute as to the title. The only question involved is the right of possession, which brings this case under the old common-law action in ejectment, solely and entirely an action for possession, and in no way involving the title to the land. It is not claimed by any one in the pleadings, in the evidence, or in any way, that John Harris was in possession of the premises, or that he was claiming any title, right of possession, or any other interest in said premises. If this is solely and distinctly an action for possession, and the defendant John Harris is not claimed in any way to be in possession, why should he be made a party to the case? The mere claim, or even fact, that the other defendants were claiming possession under some contract with him, would not make him a necessary party; if so, it would be necessary to make the person under or through whom Harris was claiming, a party, and so on, ad infinitum.

In volume 7, p. 314, Enc. Pl. & Pr., the rule is laid down as follows.

"Neither the landlord, nor any other person out of possession of the premises demanded, can be joined as a codefendant, in ejectment, without his consent, and, if so joined, will be entitled to a nonsuit."

The same rule is recognized in Warvelle on Ejectment at section 92, in the following language:

"Where only the right of possession is involved, the person in actual occupation of the premises is always a necessary party defendant, and usually, none other need be named; the theory being that, if judgment is recovered against such occupant, it binds those under whom he occupies as well. Per-

sons not in possession, when claiming possessory rights, are proper, but not necessary, parties defendant."

The Supreme Court of Kansas, in Duffey v. Rafferty, 15 Kan. 9, says, in substance: In an action in ejectment the plaintiff may recover if he show a right paramount to the defendant, although the legal title may be in some third person.

In speaking upon this same subject, the Supreme Court of California, in Keane v. Cannovan, 21 Cal. 291, 82 Am. Dec. 738, declares that, when a recovery is had against the occupant, the judgment binds not only him, but all persons under whom he occupies, together with all persons in privity with himself. When a recovery is had against a tenant the landlord is bound by it.

From the foregoing it must be apparent that John Harris was not a necessary party to the case, and therefore the court committed no error in refusing to revive the case in the name of his heirs; nor did the court err in refusing to continue the case for the purpose of making the heirs of John Harris parties thereto.

The next errors complained of by counsel for plaintiff in error are contained in assignments 3 and 4, and go to the rulings of the court in the admission and rejection of testimony. These assignments are too general.

Rule 26 (47 Okla. x, 165 Pac. ix) of this court provides that:

"Where a party complains of the admission or rejection of testimony, he shall set out in his brief the full substance of the testimony, to the admission or rejection of which he objects, stating specifically his objection thereto."

This, counsel has failed to do, and for that reason these assignments cannot be sustained. We will say, however, that we have read the entire record carefully, and do not recall a single ruling of the court upon the admission or rejection of testimony that could in any way be prejudicial to the rights of plaintiffs in error.

The same ruling applies to assignments 8 and 9. Counsel has not taken the trouble to even attempt to point out in his brief any particular part or paragraph of the instructions to the giving or refusing of which he complains, and we have been unable to see wherein plaintiff in error has been prejudiced thereby.

The first, fifth, sixth, seventh, and tenth assignments present the question as to whether the evidence is sufficient to support the verdict of the jury and the judgment of the court. Upon that proposition, we suggest that the case was fully and fairly submitted to the jury and a verdict returned in favor of the defendant in error, and against the plaintiffs in error. That verdict was approved by the trial court, and we are well satisfied with the action of the court in that particular. The record shows that the trial court gave to the plaintiffs in error every advantage to which they were entitled, and the case was tried in a fair and able manner in every way.

The contention of counsel that the defendant in error failed to establish the competency of Davis Wells to execute the lease, for the reason that he failed to prove his age by the census card offered in evidence, is not well taken. While we do not rest the case upon that proposition, we are satisfied that from the entire record it can be said that the majority of the allottee was established; but, as said before, we do not rest the case upon that proposition. The defendant in error introduced the leases, upon which he depended. Their execution was not denied under oath, and therefore admitted. The only manner in which they were attacked was the objection of counsel for plaintiffs in error to the introduction of the census card, which objection was sustained by the court. To our mind, that evidence was immaterial under the issues. The only person who attacked the competency or age of the allottee was the defendant in error. The burden rested upon him to establish his incompetency. The presumption is in favor of the majority of the lessor.

Paragraph 1 of the syllabi in the case of Giles v. Latimer, 40 Okla. 301, 137 Pac. 113, is as follows:

"Where nothing appears to the contrary, a lessor is presumed to be an adult at the time he makes the lease, and one who relies upon his infancy to defeat his act, has the burden of proof."

Furthermore, the only answer in the case, so far as it relates to the question in hand, is a general denial, and the question of the age of the lessor could not be raised under that issue. In the recent case of Mullen v. Howard, 43 Okla. 531, 143 Pac. 660, this court, speaking through Chief Justice Kane, says:

"Under the Code, whether the Indian lessor of the plaintiff was competent to make a lease without having the same approved by the county court, and the other

questions raised touching the age of said lessor, his quantum of Indian blood, and the alienability of his homestead and surplus allotments, constitute defensive matter which is not available to the defendant under a general denial. Wilbur v. Collin, 4 App. Div. 417, 38 N. Y. Supp. 848."

This brings us to the question as to the validity of the leases involved, on the ground that they are made for a period of time in excess of that allowed by the acts of Congress. The writer hereof was first of the opinion that the terms of the lease did not violate the law in that particular, and so wrote the opinion based principally upon what we took, upon casual examination of the brief of counsel for plaintiffs in error, to be an admission that this court, in Scherer v. Hulquist, 39 Okla. 434, 130 Pac. 544, and Gladney v. Richardson, 44 Okla. 104, 143 Pac. 683, "held to the contrary" of the contention of counsel.

The facts in this case, in this regard, show that a man by the name of Mullen had valid leases on these allotments, which would expire December 31, 1911. On the 5th day of September, 1911, the defendant in error obtained the leases involved herein, which, while dated of that date, did not commence to run until January 1, 1912; the surplus lease running five years from January 1, 1912, and the homestead lease to run one year from that date, thereby binding these lands under leases for times running in excess of that allowed by the acts of Congress, in what is known as overlapping leases.

Upon a more careful reading of counsel's brief, and an examination of the case of United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844, was fully convinced that we were wrong in our first impressions, and that the leases involved herein are void for the reason that they are made for a length of time in excess of that allowed by law. Our attention was more particularly called to this view of the case, by an opinion just now handed down by Judge Devereux, in Hudson v. Hildt, 51 Okla. 359, 151 Pac. 1063, wherein he says:

"A valid lease for agricultural purposes of a restricted Creek allotment may be made during the existence of a prior, valid lease, provided it is made for a fair rental, near the termination of the existing lease, and that it does not extend the term more than five years from the date of the last lease."

Based upon the decision of Judge Devereux, supra, we are clearly of opinion that these leases are in contravention of the act of Congress of May 27, 1908, and are there-

fore void. The case should therefore be reversed and remanded, with directions to the lower court to render judgment in accordance herewith.

By the Court: It is so ordered.

### On Rehearing.

PER CURIAM. Upon rehearing being granted in the above-entitled cause, the court examined the record carefully and is satisfied the opinion formerly prepared by Mr. Commissioner Robberts, of the Supreme Court Commission, is correct.

Said opinion is therefore approved and handed down as the opinion of the Court upon rehearing.

All the Justices concur.

### On Second Petition for Rehearing.

RAINEY, J. On the second petition for rehearing our attention has been called to the fact that the learned Commissioner who prepared the original opinion in this case inadvertently overlooked the record, and was in error as to some of the matters contained in the following paragraph of the opinion:

"The facts in this case, in this regard, show that a man by the name of Mullen had valid leases on these allotments, which would expire December 31, 1911. On the 5th day of September, 1911, the defendant in error obtained the leases involved herein, which, while dated of that date, did not commence to run until January 1, 1912; the surplus lease running five years from January 1, 1912, and the homestead lease to run one year from that date, thereby binding these lands under leases for times running in excess of that allowed by the act of Congress, in what is known as overlapping leases."

An examination of the record discloses that counsel for plaintiffs in error offered in evidence three separate leases to J. S. Mullen, one of the plaintiffs in error, which leases were excluded by the court upon objections made by counsel for defendant in error. The leases not having been introduced in evidence, although the court erred in rejecting them, the case should have been reversed and remanded by this court for a new trial, instead of with directions to render judgment for plaintiffs in error upon the evidence thus excluded, for, as pointed out by counsel, the defendant in error was not afforded an opportunity to attack the leases and show that they were void, as he claims he will be able to do upon another trial.

In the opinion it is stated that the lease on the surplus allotment was dated September 5, 1911, and was for a term of five

years, beginning January 1, 1912. The homestead lease and the surplus lease were executed on the same day, and the homestead lease was to begin January 1, 1912; but the record shows that the surplus lease was to run five years from its date. In the event defendant in error is able to show upon another trial that the Mullen leases, which were erroneously rejected, were invalid, this lease on the surplus allotment must be held valid, and the defendant in error, plaintiff below, would be entitled to recover at least this portion of the allotment. The leases executed on September 5, 1911, to the defendant in error, are not necessarily invalid, even if it should be found upon another trial that at the time of this execution the plaintiffs in error had valid leases on the land expiring December 31, 1911. See Brown v. Van Pelt, 64 Okla. 109, 166 Pac. 102; United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844; Hudson v. Hildt, 51 Okla. 359, 151 Pac. 1063.

The substance of the rule announced in these cases is that under the act of Congress of May 27, 1908, regulating the leasing of restricted Indian lands for agricultural purposes, a valid lease by the owner may be made of a restricted surplus allotment of a citizen of the Five Civilized Tribes while there is an outstanding valid unexpired lease thereon, provided such lease is made near the termination of the existing valid lease, and the circumstances are such that it is necessary to make the lease at such time in order to regulate the course of cultivation intended to be pursued the following year, and provided, further, that in no case shall such new lease be for a period of more than five years from its date, and, under similar circumstances, restricted homestead allotments may be leased for the ensuing crop year during the existence of a valid outstanding unexpired lease, the new lease to begin at the expiration of the existing lease.

We are satisfied with the opinion in all other respects, and the cause is therefore reversed and remanded, with directions to the trial court to grant a new trial, and to take such other proceedings as are not inconsistent with the law as announced in the original opinion as modified herein.

All the Justices concur.