### BROWN et al. v. VAN PELT.

No. 6892—Opinion Filed June 19, 1917.

(166 Pac. 102.)

(Syllabus by the Court.)

**1. Indians—Indian Lands—Leases.**

A lease made by a full-blood Creek Indian woman of her homestead allotment on January 4, 1913, to begin on January 1, 1914, and to expire December 31, 1914, the same not being approved by the Secretary of the Interior, is in violation of the act of Congress of May 27, 1908, c. 199, 35 Stat. 312, and is void.

**2. Same.**

The authority granted to Creek Indian allottees by the provision of the act of May 27, 1908 (35 Stat. 312), to lease their restricted homesteads for only one year and their restricted surplus land for a period of not more than five years without the approval of the Secretary of the Interior, does not empower such an allottee to make an agricultural lease subject to a valid existing agricultural lease of the same property that still has practically one year to run.

**3. Same.**

A valid lease for agricultural purposes of a restricted Creek Indian's surplus allotment may be made during the existence of a prior valid lease, provided it is made for a fair rental, near the termination of the existing lease, and that it does not extend the term more than five years from the date of the new lease.

**4. Same.**

A lease executed on January 4, 1913, by a full-blood Creek Indian woman on her restricted surplus allotment to commence January 1, 1914, to run for a period of four years, where it is not shown that it was necessary to make the new lease at such time in order to regulate the course of cultivation that was to be pursued the subsequent year, is void.

Error from District Court, Okfuskee County; John Caruthers, Judge.

Action by Howard Van Pelt against E. W. Brown and others. There was a judgment for plaintiff, and defendants bring error. Reversed, with directions.

C. T. Huddleston and J. B. Patterson, for plaintiffs in error.

Norman & O'Bannon, for defendant in error.

RAINEY, J. This is an action in ejectment and for damages, commenced in the district court of Okfuskee county, Okla., by the defendant in error, Howard Van Pelt, against the plaintiffs in error, E. W. Brown, W. H. Brown, and Rhoda Yarhola, as defendants. The case was tried to a jury, and the trial resulted in a judgment for the defendant in error Van Pelt, for the possession of the premises, and $5 damages for the detention of the possession thereof. From this judgment, Rhoda Yarhola and the Browns appealed.

The material facts, briefly stated, are that in January, 1913, E. W. Brown was in possession of the surplus allotment of Rhoda Yarhola, a full-blood Creek Indian, under a five-year lease contract, which by its terms expired December 31, 1913; that on January 4, 1913, the defendant in error, Van Pelt, entered into a written lease contract with the allottee, Rhoda Yarhola, by the terms of which he leased her surplus allotment for a term of four years, which lease was to begin January 1, 1914, and to expire December 31, 1917. On the same date Rhoda Yarhola executed a separate lease to Van Pelt on her homestead allotment, which was also in the possession of Brown, for a term of one year, said lease to begin January 1, 1914, and to expire December 31, 1914.

Counsel for the plaintiffs in error, defendants in the trial court, urge that the verdict of the jury and the judgment of the court are not supported by the evidence, and are contrary to law, and in support thereof contend that the leases upon which the defendant in error based his action are void. If counsel's contention is correct, it will be unnecessary to consider the remaining questions involved in the appeal. Brown, one of the plaintiffs in error, who was in possession of the land in controversy on the date of the execution of the two leases, continued in possession throughout the year 1913, and was still in possession at the time of the institution of this suit.

As above stated, Rhoda Yarhola was a full-blood Creek Indian, and in determining the validity of the leases executed by her we must look to and be governed by the acts of Congress applicable to Creek citizens leasing their restricted allotments for agricultural purposes. It will be noted that the leases in question were executed in January, 1913, at a time when the act of Congress of May 27, 1908 (35 Stat. 312, c. 199), was in full force and effect. Said act, with reference to the leasing of allotted lands, provides:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal; Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise. * * *"

Thus, it will be seen that Rhoda Yarhola was restricted in her right to execute leases on lands allotted to her; that her homestead allotment could be leased for a period of not more than one year, and her surplus allotment for a period of not more than five years, but that leases for longer periods of such restricted lands might be lawfully made under the supervision and with the approval of the Secretary of the Interior. There was no such approval of the leases under consideration in this case. The defendant in error, Van Pelt, contends that the lease on Yarhola's homestead allotment was for a period of only one year—that is, from January 1, 1914, to December 31, 1914—and that the allottee had the right to lease her homestead for a term of one year, even though the lease was by its terms to begin in the future and almost twelve months from the date of its execution. In support of their contention counsel cite Darnell v. Hume et al., 40 Okla. 668, 140 Pac. 775; Sullivan v. Bryant, 40 Okla. 80, 136 Pac. 412, 49 L. R. A. (N. S.) 819; Whitham v. Lehmer, 22 Okla. 627, 98 Pac. 351; Williams v. Williams, 22 Okla. 672, 98 Pac. 909; Scherer v. Hulquist,

39 Okla. 434, 130 Pac. 544; Gladney v. Richardson, 44 Okla. 104, 143 Pac. 683.

The point under consideration in the case of Scherer v. Hulquist, supra, was whether or not a Creek citizen could execute a valid agricultural lease on his restricted surplus allotment during the existence of a prior valid lease where the term of the new lease, added to the unexpired term of the existing lease, did not exceed a period of five years from the date of the execution of the new lease. In that case one Jasper Sarty, on September 16, 1902, executed an agricultural lease upon his surplus allotment to one W. A. Garrison, for a term of four years, beginning January 1, 1903, and extending to January 1, 1907. During the existence of the term of this lease the said Sarty executed another lease to one Hulquist, bearing date of May 31, 1904, and extending from January 1, 1906, to January 1, 1909. This court, in an opinion by Commissioner Ames, held the Hulquist lease valid. An examination of the opinion in the case discloses that Commissioner Ames apparently based his decision largely upon the case of United States v. Noble, which case at that time had been decided by the United States Circuit Court of Appeals for the Eighth Circuit, and was then reported in 197 Fed. 292, 116 C. C. A. 654. The Circuit Court of Appeals affirmed the judgment of Judge Ralph Campbell, United States Judge for the Eastern District of Oklahoma, holding valid what is known as "overlapping leases." Subsequently the case was appealed to the Supreme Court of the United States, which court reversed the Circuit Court of Appeals.

The facts presented and the holding of the United States Supreme Court appear from the following quotation from the opinion in the case, which is reported in United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844:

"The lease, here in controversy, was made on March 25, 1905, for ten years from date [paragraph (3)]. The property was already subject to a lease, concededly valid, for ten years from January 11, 1902. The lease under which the appellee claims is what is known as an 'overlapping lease.' It is not necessary to describe transactions of this character, for they are abundantly illustrated in the record which shows that this allottee made six leases of the same rights in less than five years, each for ten years from date with the exception of the last, which was for twenty years, and all reserving substantially the same rents and royalties which were reserved in the first lease at a time when the property had not been prospected. The practice, to say the least, is an abnormal one, and it requires no extended discussion to show that it would facilitate abuses in dealing with ignorant and inexperienced Indians. It is urged, however, that the manner of dealing with the Indians, in gradually releasing them from guardianship and preparing them for complete independence, is for Congress to determine; that Congress has in this case authorized a lease for ten years; that this was a lease for ten years, and no longer, and hence was within the authority; and that, however wise it might have been to prohibit 'overlapping leases,' Congress did not so provide. We are of the opinion that this is too short a view. The question is as to the scope of the authority given by Congress; that is, whether it did not extend simply to leases in possession, and should be taken not to include 'leases in reversion.' The allottee, as we have seen, is under an absolute restriction with respect to his reversion for a period of twenty-five years from the date of his patent. In the light of this restriction, and of the governmental policy which induced it, there is sound reason for construing the power as not authorizing anything more than a lease in possession, as well understood in the law. At common law, as the government points out, it was the established doctrine, that a tenant for life, with a general power to make leases, could make only leases in possession, and not leases in reversion or in futuro. He was not authorized by such a power to make a lease to commence 'after the determination of a lease in being.' Such a lease was deemed to be 're-versionary.' Sussex v. Worth, Cro. Eliz. pt. 1, p. 5; Shecomb v. Hawkins, Cro. Jac. 318, Velv. 222; Winter v. Loveday, 1 Comyns Rep. 37; Sugden, Powers, p. 749; 4 Greenlief's Cruise's Dig. 165, 166; Taussig v. Reel, 134 Mo. 530, 544-547, 34 S. W. 1104; Woodfall, Land. & T. (19th Ed.) 239, 244, 245. 'A general power to lease for a certain number of years without saying either in possession or reversion only authorizes a lease in possession, and not in futuro. Such a power receives the same construction as a power to make leases in possession. What is expressed in the one is understood in the other.' Shaw v. Summers, 3 J. B. Moore, 196. This is not to say that an agreement for a new lease, at a fair rental, made shortly before the expiration of an existing lease, would not be sustained in equity. See Dowell v. Dew, 1 Younge & C. Ch. Cas. 345, 12 L. J. Ch. N. S 158, 7 Jur. 117.

"We are unable to see that the allottee under the power in question has any better position. The protection accorded by Congress, through the restriction upon the alienation of the allottee's estate—modified only by the power to lease as specified—was not less complete because the limitation was not in the interest of a remainderman, but was for the benefit of the allottee himself as a ward of the nation. The act of 1897 gives him authority 'to lease' for a term not exceeding the stated limit. Taking the words in their natural sense, they authorize leases in possession and nothing more. The language does not compel the recognition of leases which are to take effect in possession

many years after their execution, if, indeed, it could be assumed that they were not intended to be concurrent. Such leases certainly violate the spirit of the statute, and according to the analogies of the law, they violate its letter. If, on the other hand, the lease be deemed to be a concurrent lease, that is, to be effective from its date, then it could only have that effect, being subject to the existing lease, as a grant or assignment of the reversion while the existing lease continued. Accordingly, it would entitle the lessee, as assignee of part of the reversion, to the rent reserved in the previous lease. Bacon, Abr. Title, Leases (n) ; Harmer v. Bean, 3 Car. & K. 307 ; Woodfall, Land. & T. (19th Ed.) 245, 246. But every conveyance of the reversion, or of any interest therein was clearly prohibited by the restriction. From every point of view, we must conclude that a lease for ten years, made in 1905, subject to an existing lease for ten years, of the same property, which by its terms was to run until 1912, was unauthorized and void."

It might be argued that the Noble Case was based upon a different statute, to wit, an act of Congress relating to leases by Quapaw Indians, but we see no difference in principle. Since the above decision by the United States Supreme Court the question was again before this court in the cases of Hudson v. Hildt, 51 Okla. 359, 151 Pac. 1063, Apple et al. v. Westheimer & Daube, 55 Okla. 532, 155 Pac. 623, and Apple et al. v. Pierce et al., 56 Okla. 13, 155 Pac. 892. In the first-named case Commissioner Devereux, after reviewing all the previous decisions of this court on the question now before us, pointed out the conflict of said cases with the decision of the Supreme Court of the United States in the Noble Case, supra.

The lease in the case then under consideration by Commissioner Devereux was executed on October 29, 1909, for a term of five years, beginning January 1, 1910, and expiring January 1, 1915. The lease was declared void for the reason that it extended more than five years from the date of its execution. The second paragraph of the syllabus reads:

"A valid lease for agricultural purposes of a restricted Creek allotment may be made during the existence of a prior, valid lease, provided it is made for a fair rental, near the termination of the existing lease, and that it does not extend the term more than five years from the date of the last lease."

We think the case of Apple et al. v. Pierce et al., supra, is in point. There the lease was executed by a Chickasaw citizen on his restricted homestead allotment in January, 1910, to begin the first of the following January, and to extend for a period of one year.

The lease was held invalid. The syllabus reads:

"Where a valid lease by a Chickasaw citizen of his restricted homestead allotment is made for agricultural purposes, and before it expires another lease for agricultural purposes is made to the same lessees for a period of one year, to commence in the future, the last lease, not being approved by the Secretary of the Interior, is void."

The lease in the Pierce Case was made to the lessee in possession under an existing lease, and in the instant case Van Pelt, the lessee, was not in possession on the date of execution of the new lease, but we think this is immaterial. The language above quoted from the act of May 27, 1908, is not ambiguous. The statute was intended as an absolute prohibition against the allottee either in or out of possession from executing a lease on his or her surplus allotment to begin in the future that would expire at a date more than five years from date of execution, and from executing a lease on the homestead to begin in the future that would expire at a date more than one year from the date of execution.

If Rhoda Yarhola, the Creek allottee in this case, could make a valid lease on her homestead allotment January 4, 1913, to begin January 1, 1914, and to expire January 1, 1915, we see no reason why on the same date she could not execute a lease to another person to begin January 1, 1915, to run until January 1, 1916. This could not be done, for it would frustrate the government policy, and would enable the allottee or those dealing with her to defeat the very object of the statute.

The aggregate period covered by Van Pelt's lease on the homestead, to wit, from January 1, 1914, to January 1, 1915, added to the unexpired portion of the year 1913 from January 4, 1913, to the end of the year, was practically two years. Therefore the lease executed by Rhoda Yarhola to Van Pelt on her homestead is void, for the reason that Rhoda Yarhola on January 4, 1913, the date of the execution of the lease to Van Pelt, could not say that her land would be surrendered to her within one year, and she had no authority to lease it for a longer term without the approval of the Secretary of the Interior, which, as we have heretofore stated, was not had in this case. Now, the lease on the surplus allotment presents a different question. As we have seen, under the laws the allottee, Rhoda Yarhola, was permitted to lease the surplus for a term not to exceed five years from date of the execution of the lease. The period from January 4, 1913, to January 1, 1914, during which Brown had possession of

the land under his lease, added to the four-year period covered by the lease to Van Pelt, did not exceed five years, and Rhoda Yarhola could say that within five years from the date of the execution of said lease to Van Pelt her land would be free from all leases, and she would be entitled to the possession thereof. Now, is the Van Pelt lease, on the surplus, invalid for the reason that it was made during the existence of a prior valid lease? We think the lease void under the reasoning in the decision of the United States Supreme Court in the Noble Case, supra. However, in said opinion we find this language:

"This is not to say that an agreement for a new lease, * * * made shortly before the expiration of an existing lease, would not be sustained in equity."

And in the case of Hudson v. Hildt, supra, Commissioner Devereux, speaking for the court, said:

"In Dowell v. Dew, 1 Younge & C. Ch. Cas. 345, also reported in 7 Jurist (1843) 117, cited in the Noble Case, it is said: 'It is true that in this instance the interval is considerable, but the reasons assigned for it appear to be satisfactory, namely, that it was material, in order to regulate the course of cultivation which was to be pursued in the subsequent year, that the tenant should know what he had to depend on in respect to the future.' This, in our opinion, is the true rule in cases of this character. An agricultural lease may be made during the existence of a valid unexpired lease, but only for a fair rental, and near the expiration of the valid lease, that the tenant may know what he has to depend upon for the ensuing year, but in no case can such lease be for a period of five years, to begin in the future."

In the instant case it is unnecessary for us to decide how near the termination of an existing prior valid lease the new lease would have to be executed before it would be upheld by this court, for this question is not presented in the record. It is not claimed that it was necessary to make the new lease practically one year before the old lease expired "in order to regulate the course of cultivation which was to be pursued the subsequent year," and there is nothing in the record from which we can infer that such necessity existed. It seems to us that the time of making a lease during the existence of a prior valid lease would depend upon many circumstances, and it would be hard to make a rule applicable to all cases. In those sections of this state where wheat is the principal crop it would be important to make arrangements for the succeeding crop year much sooner than in those sections of the state where cotton and corn are the principal crops. To the extent that the cases of Dar-nell v. Hume et al., 40 Okla. 688, 140 Pac. 775, Sullivan v. Bryant, 40 Okla. 80, 136 Pac. 412, 49 L. R. A. (N. S.) 819, Whitham v. Lehmer, 22 Okla. 627, 98 Pac. 351, Williams v. Williams, 22 Okla. 672, 98 Pac. 909, Scherer v. Hulquist, 39 Okla. 434, 130 Pac. 544, and Gladney v. Richardson, 44 Okla. 104, 143 Pac. 683, are in conflict with this opinion, they are hereby overruled.

From what we have said, it follows that this case must be reversed, with directions to the trial court to enter judgment for the defendants.

All the Justices concur, except KANE, J., absent.