## HULL v. MORRIS et al.

No. 12242—Opinion Filed Nov. 6, 1923.

Rehearing Denied Feb. 19, 1924.

### Indians—Lease of Restricted Land—Invalidity.

A lease contract executed by a restricted Choctaw Indian, September 25, 1916, on his restricted surplus allotment for a term of five years, commencing January 1, 1917, and ending December 31, 1921, whether overlapping or not, whether in the course of agriculture or not, whether lessee is in possession or not, is void, being in conflict with the act of Congress of May 27, 1908.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Action by H. C. Morris against J. L. Hull and others. From the judgment, Hull brings error. Affirmed.

J. G. Ralls and John L. Boland, for plaintiff in error.

McPherrin & Hannah, for defendants in error.

Opinion by THREADGILL, . This is an appeal from a judgment of the district court of Atoka county, rendered on November 9, 1920. The plaintiff in error, J. L. Hull, with R. A. Price, Jr., A. Neely, and F. P. Semple, were defendants, and defendant in error H. C. Morris, was plaintiff.

The plaintiff in bringing his suit made F. P. Semple a party defendant and in the progress of the case the interest of the plaintiff decreased until he claimed nothing, and the interest of F. P. Semple increased until he claimed all the interest, and at the time the judgment was rendered the controversy was between Semple and Hull. Semple claimed he was the owner of and entitled to the possession of the N. E. ¼ of section 20, T. 4 S., R. 11 E., in Atoka county, being the restricted surplus allotment of Wilson Gibson, deceased, who was a full-blood Choctaw Indian, and his fee-simple title was undisputed in the trial of the case.

Hull claimed a leasehold estate by virtue of a five-year lease contract from the said allottee to P. Z. Roland, dated September 17, 1916, to commence and be in force from January 1, 1917, to end December 31, 1921, the same was not approved by Secretary of the Interior, and said contract was assigned to him November 15, 1918. These facts were undisputed in the trial of the case. Semple contended that this contract is a void contract and should be canceled. The cause was tried to the court without a jury, and the court made the following finding of fact:

"First. That the defendant F. P. Semple is the owner of the lands described in the plaintiff's petition.

"Second. That the defendant J. L. Hull was at the commencement of the action and now is in possession of the lands described in plaintiff's petition under and by virtue of a certain written contract executed by one Wilson Gibson to P. C. Roland on the 25th day of September, 1916, for a period beginning January 1, 1917, and ending December 31, 1921." (The next two paragraphs in the finding of the court state the recording, assignment, and the recording of the assignment of the lease contract.)

"Fifth. The court further finds that at the time of the execution of said lease there was no other contract upon said land."

The sixth finding of the court states that Roland took possession of the land under his lease contract and was in possession at the time he assigned the same to Hull and the seventh paragraph states that it was the custom in neighborhood and vicinity where land was located to make rental contracts for the same as early as the first of September preceding the year before taking possession.

In the 8th and 9th paragraphs of the finding the court states the fact that the lease contract in controversy does not expire until the 31st day of December, 1921, and that the lands involved were allotted to Wilson Gibson, a full-blood Choctaw Indian, as his surplus allotment and the court made the following conclusion of law:

"The court concludes that as a matter of law the contract having been entered into on the 25th day of September, 1916, to begin on January 1, 1917, and run for five years is void and that the defendant J. L. Hull is not entitled to hold said premises and that the defendant F. P. Semple is entitled to recover the possession of the lands and to have the contract entered into between Wilson Gibson and P. Z. Roland and assigned to J. L. Hull canceled and set aside."

And thereupon the court rendered judgment according to the conclusion of law.

The defendant Hull saved his exceptions to the finding and judgment of the court and brings the case here by petition in error and case-made for review, and urges four assignments of error, which involve the one question as to whether or not a lease contract for five years on a full-blood Choctaw restricted Indian's surplus allotment made in September, 1916, where there is no prior lease contract on said land, commencing January 1, 1917, and ending December 31, 1921, is a valid lease contract. This is the only question in the case necessary for us to consider in settling the controversy between the parties. If this lease contract is a valid and subsisting contract be-

tween parties that made it then the defendant Hull should be sustained in his contention, and if it is not, F. P. Semple should be sustained, and the judgment of the court affirmed.

This question is to be determined by a proper construction of section 2 of the act of Congress of May 27, 1908, which reads as follows:

"That all lands, other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed, may be leased by the allottee, if an adult, or by guardian or curator, under order of the proper probate court, if a minor or incompetent, for a period, of not to exceed five (5) years without the privilege of renewal; provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homestead for more than one year and leases of restricted land for a period of more than five (5) years may be made with the approval of the Secretary of the Interior under rules and regulations provided by the Secretary of the Interior, and not otherwise."

It is clear from the language used in this act that it was the intention of Congress to authorize the restricted Indian to rent or lease his surplus allotment for agriculture for a period of five calendar years and no longer, and his homestead for one calendar year and no longer, without the approval of the Secretary of the Interior. There is no conflict of authorities on this proposition. Counsel on both sides of the case before us for consideration must concede it.

It is also true that the authorities hold, in construing this act in its application to lease contracts made while other legal contracts are in force and near the end of the year or term of a prior contract, and to meet the requirements of agriculture, and for a reasonable consideration, and "provided in no case shall such new leases be for a period of more than five years from their date," in case of the surplus allotment; and one year in case of the homestead allotment, that such contracts are legal under said act. Mullen et al. v. Carter, 68 Okla. 207, 143 Pac. 512; Brown v. Van Pelt, 64 Okla. 109, 166 Pac. 102; Hudson v. Hildt, 51 Okla. 359. 151 Pac. 1063; United States v. Noble, 237 U. S. 74, 59 L. Ed. 844.

It is also settled by these authorities that where the few leases are overlapping leases and extend for more than five years from date of execution, they are void.

There is no question of the overlapping lease in the case so far as the record shows. There was no tenant occupying the premises and there was no rental or lease contract on the land when the lease was made to Roland. It was executed on September 25, 1916, to commence January 1, 1917, and to end December 31, 1921, which was five years, three months, and five days from its date; the time of its execution is not justified on agricultural considerations, but on custom.

"The court finds that it was the custom in the neighborhood and vicinity where said lands were located for the owners of the land to enter into contracts to lease the same to tenants as early as the first day of September preceding the year that such tenant should take possession of such land."

The question here is whether or not the lease is void, being for a term of five years from January 1, 1917, to December 31, 1921, being executed three months and five days before the beginning of the term. We understand that it is not the contention of any one that the time between the execution of the lease and the beginning of the term expressed in it is any part of the term of the estate conveyed. We agree with counsel for defendant Hull as to the nature and rights of the estate conveyed in a lease contract and that the contract in this case executed in September did not give the tenant any rights over the land in the interim from September to January, and we are in accord with the authorities cited: Young v. Drake, 5 N. Y. 463; volume 8, Words and Phrases, 6916, 6917; Paulton v. Kreiser, 18 S. D. 487. 101 N. W. 46: Taylor v. Terry (Cal.) 11 Pac. 813.

But we cannot follow counsel in their conclusion and application of these definitions and rules stated as a correct construction of the intent of Congress in the act of May 27, 1908. If Congress meant that this sort of contract could be made, the contention of counsel and authorities cited would be good reason upon which to base the intent: but if Congress did not intend to authorize such a contract, these definitions and authorities would still be applicable in defining the rights of landlord and tenant, but could not be substituted for the legislative intent.

Counsel quote from the case of Dowell et al. v. Brown, 86 Okla. 204, page 206, 208 Pac. 220, as follows:

"It is conceded that Commessee was a full-blood Creek Indian and that the land in controversy was her surplus allotment and that she was a restricted Indian and that the land was likewise restricted, that the original lease dated September 27, 1912, to begin January 1, 1913, and to expire December 31, 1917, was a valid lease and that the rents stipulated therefor, therein, were paid to the lessee."

Also cite and quote "the course of cultivation" provision as basis for lease con-

tracts before the beginning of the year in the case of Brown et al. v. Van Pelt, 64 Okla. 109, 166 Pac. 102; also cite and quote from Carden v. Humble, 76 Okla. 165, 184 Pac. 104, and Taylor et al. v. Callahan, 82 Okla. 67, 198 Pac. 487.

We cannot see the application of these quotations to establish the defendant's contention that this lease contract based upon custom as to the time it was executed would make it valid, although for a term of more than five years from date of execution.

The quotation taken from the Dowell et al. v. Brown Case refers to a lease that was not contested, but conceded, and the court was not passing on the validity of this lease. In the syllabus of this case the court lays down this rule:

"Where a valid lease by a Creek citizen of her restricted allotment is made for agricultural purposes, and before it expires two other leases for agricultural purposes are made to the same lessee, to begin in the future, one for a period of one year and the other for a period of three years, neither of which was approved by the authority of the Secretary of the Interior, both of said leases are void, because in violation of sections 2 and 5 of act of Congress of May 27, 1908."

In case of Brown et al. v. Van Pelt, supra, cited and quoted from by the defendant, the court had under consideration the question of overlapping leases, one on the surplus allotment, dated January 14, 1913, to begin January 1, 1914, and to expire December 31, 1917, and on her homestead allotment, same date, to begin January 1, 1914, and to expire December 31, 1914, and the court held both of the overlapping leases void, and in passing the court used this language, which we think is applicable to the instant case and against the defendant's contention:

"The lease in the Pierce Case was made to the lessee in possession under an existing lease, and in the instant case Van Pelt, the lessee, was not in possession on the date of execution of the new lease, but we think this is immaterial. The language above quoted from the Act of May 27, 1908, is not ambiguous. The statute was intended as an absolute prohibition against the allottee either in or out of possession from executing a lease on his or her surplus allotment to begin in the future that would expire at a date more than five years from date of execution, and from executing a lease on the homestead to begin in the future that would expire at a date more than one year from the date of execution.

"If Rhoda Yarhola, the Creek allottee, in this case, could make a valid lease on her homestead allotment January 4, 1913, to begin January 1, 1914, and to expire January 1, 1915, we see no reason why on the same date she could not execute a lease to another person to begin January 1, 1915, to run until January 1, 1916. This could not be done, for it would frustrate the government policy, and would enable the allottee or those dealing with her to defeat the very object of the statute."

Then the court quotes from the Noble Case, in which it is intimated that an agreement for a new lease made shortly before the expiration of an existing lease would be sustained in equity, and also from Hudson v. Hildt, where the intimation in the Noble Case is approved and applied, and uses the following language:

"This, in our opinion, is the true rule in cases of this character. An agricultural lease may be made during the existence of a valid unexpired lease, but only for a fair rental, and near the expiration of the valid lease, that the tenant may know what he has to depend upon for the ensuing year, but in no case can such lease be for a period of five years, to begin in the future."

In the case of Carden et al. v. Humble is involved the validity of an oral lease, executed by the restricted allottee for his homestead allotment, made in October 1, 1914, while the lessee was in possession for the year commencing January, 1915. Justice McNeill, speaking for the court, uses this language:

"The courts have adopted or practically adopted the rule that a full-blood may lease the homestead for a period of one year by verbal lease, as stated in the case of U. S. v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844. Then the same rule and reason would apply to a written lease for five years to begin in the future. This court has laid down the following rule in the case of Hudson v. Hildt:

" 'A valid lease for agricultural purposes of a restricted Creek allotment may be made during the existence of a prior, valid lease, provided it is made for a fair rental, near the termination of the existing lease, and it does not extend the term more than five years from the date of the last lease." Hudson v. Hildt, 51 Okla. 359, 151 Pac. 1063; Brown v. Van Pelt, 64 Okla. 109, 166 Pac. 102.

The case of Taylor et al. v. Callahan, supra, is the only case that seems to sustain the defendant's contention, but it must be remembered that this case involved inherited land and the validity of the lease by guardian approved by order of the county court and went off on a demurrer to the petition.

In the second paragraph of the syllabus the court lays down the following rule for the facts of the case:

"A lease made by a guardian of Creek minors of their inherited lands in July, 1917, for agricultural purposes for the year 1918, and approved by the county court, is not void as an overlapping lease when it is not disclosed that the land had been leased for 1917, and nothing in the record to disclose that the lease executed in July, 1917, was not executed in the usual and customary time for leasing lands for agricultural purposes in that vicinity for the year 1918."

This rule follows Mullen v. Carter, supra, and Brown v. Van Pelt, supra, in this matter of waiving the strict construction of the act of May 27, 1908, stated in United States v. Noble, in the interest of agriculture, and the only thing that seems to favor the defendant is that the rule as stated is not qualified or limited as in the Noble Case and in the Brown v. Van Pelt Case, by stating at the end of the paragraph not to exceed one year in case of homestead or five years in case of surplus from date of the contract.

The defendants in error in meeting the contention of the plaintiff in error call attention to the construction of said act of Congress in the following cases:

In Mullen v. Noah, 64 Okla. 181, 166 Pac. 742, the court stated in the syllabus as follows:

"A valid lease for agricultural purposes of a restricted Choctaw Indian's surplus allotment may be made during the existence of a prior valid lease, provided it is made for a fair rental, near the termination of the existing lease, and it does not extend the term more than five years from the date of the new lease."

In Mullen v. Carter, 68 Okla. 207, 173 Pac. 512, it is said:

"The substance of the rule announced in these cases is that under the act of Congress of May 27, 1908, regulating the leasing of restricted Indian lands for agricultural purposes, a valid lease by the owner may be made of a restricted surplus allotment of a citizen of the Five Civilized Tribes while there is an outstanding valid unexpired lease thereon, provided such lease is made near the termination of the existing valid lease, and the circumstances are such that it it necessary to make the lease at such time in order to regulate the course of cultivation intended to be pursued the following year, and provided, further, that in no case shall such new lease be for a period of more than five years from its date, and under similar circumstances, restricted homestead allotments may be leased for the ensuing crop year during the existence of a valid outstanding unexpired lease, the new lease to begin at the expiration of the existing lease."

In Hudson v. Hildt, 51 Okla. 359, 151 Pac. 1063, it is said:

"Does the last clause of this extract from the opinion (U. S. v. Noble, 237 U. S. 74), that an agreement for a new lease at a fair rental, made shortly before the expiration of an existing lease, would be sustained in equity, take this case from under the general rule there laid down. We think not, because in the present case the new lease was for five years, to begin on January 1, 1910, which extended for more than five years from the date of the lease. We do not decide that a valid agricultural lease cannot be made during the life of an existing valid lease, but in no event can one be made to the tenant in possession, beginning in the future and extending the term for more than five years from the date of the lease."

In Brown v. Van Pelt, 64 Okla. 109, 166 Pac. 102, the court said:

"The language above quoted from the act of May 27, 1908, is not ambiguous. The statute was intended as an absolute prohibition against the allottee either in or out of possession from executing a lease on his or her surplus allotment to begin in the future that would expire at a date more than five years from date of execution, and from executing a lease on the homestead to begin in the future that would expire at a date more than one year from the date of execution."

In Taylor v. Granger, 70 Oklahoma, 174 Pac. 234, this court said:

"The determining question in this case is: Did the allottee, a member of the Chickasaw Tribe, have a right to lease said allotted lands for a period of five years, the lease to begin some twenty months after the execution of said lease, We are of the opinion, and so hold, that a full-blood restricted Indian did not have the right to execute a binding agricultural lease of his allotted lands for a period of five years, to commence at a time twenty months after execution of the lease."

In Walker v. Holmes, 91 Okla. 64, 215 Pac. 1065, it is said:

"A lease executed on the 23rd day of July, 1917, by a full-blood Choctaw Indian, upon her surplus allotment, to commence on the first day of January, 1918, at the expiration of a valid existing lease, and for a term of five years from the first day of January, 1918, is void."

And in Brown v. Van Pelt. supra, we have the following language:

"The statute was intended as an absolute prohibition against the allottee either in or out of possession from executing a lease on his or her surplus allotment to begin in the future that would expire at a date more than five years from date of execution."

We must, therefore, conclude from the construction of the act of Congress of May 27, 1908, by the decisions of this court and United States court that a lease contract for the restricted surplus of a full-blood Indian allottee for a longer period than five years from its date, whether overlapping or not, or whether the question of agriculture is involved or not, or whether in possession or out, is void, and the trial court's conclusion of law based upon the facts in the instant case was correct, and the judgment canceling the lease should be affirmed.

By the Court: It is so ordered.